Johnny  DICKERSON,
Petitioner-Appellant,

v.

STATE  OF  LOUISIANA,  et al.,
Respondents-Appellees.

No.  86–3193.

United  States  Court  of  Appeals,
Fifth  Circuit.

May  13,  1987.

Rehearing Denied June 25, 1987.

due process rights have been violated. We conclude that a pre-trial habeas remedy is not available to consider the merits of his sixth amendment speedy trial claim or his due process claim. Accordingly, we affirm.

## I.

Dickerson was arrested by Louisiana officials on murder and kidnapping charges after he had finished serving a federal sentence on September 18, 1986. While still serving his federal sentence, a detainer was lodged against Dickerson with federal prison officials in connection with the murder and kidnapping charges.

The alleged murder and kidnapping for which Dickerson was arrested occurred on April 25, 1981, in Tangipahoa Parish, Louisiana. Dickerson had been arrested by state officials on January 19, 1981, for receiving stolen goods and was released on bond. He was free until February 2, 1982, when he was arrested for aggravated assault by state officials and again released on bond. After that he was free for six months until arrested for a firearms violation by the FBI on August 22. Shortly thereafter, on September 2, Dickerson was convicted of the federal firearms violation; he served his sentence in various federal prisons until he was released on September 18, 1986.

On February 3, 1983, while Dickerson was in a federal prison, two arrest warrants were signed by a judge of a Louisiana state court.[1] The arrest warrants alleged respectively that Dickerson committed first degree murder and aggravated kidnapping. After these warrants were issued, the Tangipahoa Parish Sheriff's Office wanted to extradite Dickerson from the federal prison in Harrisburg, Pennsylvania, where Dickerson was being held. However, federal officials told the sheriff's office that they would not release Dickerson while he was in federal custody. The sheriff's office was told by federal officials that the only thing the sheriff's office

Caleb Didriksen, (Court-appointed), New Orleans, La., for petitioner-appellant.

Gail K. Sheffield, Charles V. Genco, Asst. Dist. Attys., Amite, La., for respondents-appellees.

Before GARWOOD, JOLLY and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Johnny Dickerson appeals the denial of his petition for a writ of habeas corpus. He contends that his sixth amendment right to a speedy trial has been violated and also that his fourteenth amendment

---

1. The arrest warrants stated:
   You are therefore commanded in the name of the State of Louisiana to forthwith arrest and book said accused and take _____ before the 21st Judicial District Court of the Parish of Tangipahoa, Louisiana, there to be dealt with according to law.

could do was issue a detainer. Accordingly, Detective Westmoreland of the sheriff's office then placed a detainer on Dickerson with federal prison officials based on the arrest warrants.[2] On February 15 the sheriff's office was advised of the acceptance and placement of the detainer.

Dickerson first requested a speedy trial on the murder and kidnapping charges in affidavit form on March 12, 1983. On April 27 Dickerson wrote the state court for information concerning his motion for speedy trial. The matter was set for hearing on June 15; the hearing was held, but the result is unknown and there is no transcript of the hearing in the record. On July 20 another hearing on the motion was held, but again there is no result in the record, and again no transcript was made. It appears, however, that the motions were denied.

In October 1983 Dickerson wrote further motions requesting a speedy trial; these motions were apparently filed with the state court in late October or early November. On December 21 Dickerson was advised by a letter from the clerk of the 21st Judicial District Court that it no longer had any outstanding charges or warrants for his arrest but that the clerk's office had no information regarding any detainers that might have been placed on him.[3]

During this time Dickerson was also pursuing other avenues of relief regarding the detainer. On October 8, 1983, through a request for an administrative remedy from the United States Department of Justice, Dickerson asked that the detainer be removed from his file. On October 19 the government advised him that Louisiana needed to file for a writ ad prosequendum. On November 28 Dickerson's request to the government for an administrative remedy was denied; the government responded that two arrest warrants filed by the sheriff's office in Tangipahoa Parish with federal prison officials were outstanding and remained in effect. Furthermore, since Louisiana was not a member of the Interstate Agreement on Detainers Act (the Detainers Act), 18 U.S.C.App., the government informed Dickerson that he could not request disposition under the Detainers Act.[4]

On December 14 Dickerson filed a request for an appeal of the government's denial of his request for an administrative remedy; that request was denied on December 22.

On January 3, 1984, Judge Fogg of the state district court denied a request to discharge Dickerson from state custody. Dickerson subsequently filed further motions with the district court as well as an application for a writ of mandamus with the state court of appeals. On January 10 the Louisiana First Circuit Court of Appeal denied the writ and other relief. Dickerson then filed another motion for a speedy trial in the state district court.

On January 24, 1984, the government advised Dickerson that it could not force Louisiana to try him, that it had verified with the state court that the arrest warrants were valid and outstanding, and that consequently it would not remove the de-

---

**2.** A detainer may be lodged against a prisoner on the initiative of a prosecutor or law enforcement officer. A detainer informs the officials of the institution in which the prisoner is incarcerated that the prisoner is wanted on pending criminal charges elsewhere upon his release from prison, and requests notification to the filing jurisdiction prior to the prisoner's release. See *United States v. Mauro*, 436 U.S. 340, 358, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978).

**3.** The apparent confusion over the status of the detainers was caused by the fact that the sheriff's office in Tangipahoa Parish is not required to and does not file copies of outstanding warrants with either the district attorney or the clerk of the court. Consequently, when Dicker-

son wrote these latter two offices to request information about the detainers, officials had no knowledge about the detainers.

**4.** The Detainers Act prescribes procedures by which a member state may obtain for trial a prisoner incarcerated in another member jurisdiction and by which a prisoner may demand the speedy disposition of certain charges pending against him in another jurisdiction. See generally *Mauro*, 436 U.S. at 349–55, 98 S.Ct. at 1841–45. Under Article III of the Detainers Act, a state becomes a member when it enacts the provisions of the Detainers Act into law. The federal government is also a member of the Detainers Act. See 18 U.S.C.App. § 2.

tainer. On January 30 Dickerson filed another motion for a speedy trial with the state court. On February 15 he filed a notice of appeal from Judge Fogg's ruling of January 3, and on March 16 he filed another motion in state court asking the court to dismiss the charges along with a brief in support of the motion. On May 30 the state appeals court denied Dickerson's request for appeal and for supervisory writs, 450 So.2d 1080 (La.Ct.App.1984).

On July 3, 1984, Dickerson again requested the federal government to remove the detainer. On December 2 Dickerson renewed his request for information from the federal government about the detainers. Eight days later, on December 10, Dickerson was advised that the detainer had been placed by the Tangipahoa Parish Sheriff's Office. He filed another petition for a speedy trial in the state court that same day.

On January 28, 1985, the chief criminal deputy of the sheriff's office wrote the manager of the United States Penitentiary Administration Systems and informed him that he (the deputy) intended to have Dickerson arrested for murder and kidnapping. On January 31 Dickerson filed another petition for a writ of habeas corpus ad prosequendum with the state court. In his petition, Dickerson again asked that he be tried as quickly as possible; alternatively, he asked the court to dismiss the charges against him with prejudice for violation of his sixth amendment right to a speedy trial. At this point, however, the state had not yet indicted Dickerson on any specific charges. The state court apparently denied the motion. Dickerson subsequently applied for remedial writs from the Louisiana Supreme Court; although the record

does not reflect when this was done, on February 8 the Louisiana Supreme Court denied his application. On May 14 Dickerson filed two more motions for a speedy trial in the state court.

Having seemingly exhausted all potential state remedies, Dickerson filed a petition for habeas corpus relief in federal district court on June 15, 1985. In his pro se petition Dickerson asserted again that his sixth amendment right to a speedy trial had been violated; Dickerson also asserted that his due process rights under the fourteenth amendment had been violated. Although his petition is somewhat ambiguous, he apparently asked the court to order the removal of his detainer, to order Louisiana to grant him a speedy trial, or to dismiss the murder and kidnapping charges against him because of the long delay by Louisiana officials.[5]

On February 8, 1986, the district court denied Dickerson's petition for habeas corpus relief on jurisdictional grounds under section 2254.[6] The court reasoned that since Dickerson had never been arrested, charged, tried or convicted of any charges by Louisiana, no judgment had been rendered by a Louisiana state court that would provide a federal court with jurisdiction of his petition under section 2254(b). The court also stated in the alternative that Dickerson's sixth amendment rights had not yet attached since he had not been formally charged by the state. On February 19 the court entered a final judgment denying Dickerson's requested relief. Dickerson subsequently filed a notice of appeal.

At oral argument additional facts about Dickerson's custody were revealed. After

---

**5.** At the time Dickerson filed his petition for habeas relief in the district court, no formal charges by way of information or indictment had yet been filed against Dickerson by Louisiana.

**6.** Title 28 U.S.C. § 2254 provides in part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground

that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

Dickerson was released from federal prison on September 18, 1986, he was brought to Louisiana when the detainer was activated. Dickerson was then arrested and brought before a Tangipahoa Parish grand jury on November 13 and was indicted that day for one count each of first degree murder, aggravated kidnapping, and armed robbery. At his arraignment on November 24, Dickerson pled not guilty; his trial was set for April 27, 1987. Dickerson is currently being held in the Lafayette Correctional Center awaiting trial.[7]

## II.

Our task then is to determine whether Dickerson is entitled to raise his speedy trial[8] and due process claims through federal habeas corpus proceedings before Louisiana has tried him on state charges when his constitutional claims can be raised at his state trial.

### A.

■ We note first that Dickerson's petition under 28 U.S.C. § 2254 is improper because that section applies only to post-trial situations and affords relief to a petitioner "in custody pursuant to the judgment of a state court." 28 U.S.C. §§ 2254(a) and (b). Pre-trial petitions such as Dickerson's are properly brought under 28 U.S.C. § 2241, which applies to persons in custody regardless of whether final judgment has been rendered and regardless of the present status of the case pending against him.[9]

7. Subsequent to oral argument, Dickerson's attorney has informed us that the first degree murder charge against Dickerson has been reduced to second degree murder. In addition, the state informed Dickerson's attorney that Dickerson's trial will be set "soon after hearing from the 5th Circuit Court."

8. The Speedy Trial Clause of the sixth amendment reads:
    "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ..."

9. Title 28 U.S.C. § 2241 provides in relevant part:
    \* \* \* \* \* \*
    (c) The writ of habeas corpus shall not extend to a prisoner unless—

It appears the district court primarily denied Dickerson's habeas petition due to lack of jurisdiction under section 2254. We believe the court erred in resting its decision on this jurisdictional basis. Dickerson's petition does not explicitly refer to section 2254 as the basis of the district court's jurisdiction. Throughout his habeas proceedings, Dickerson has been pro se until this court appointed counsel to represent him in this appeal. Under the circumstances, we will construe Dickerson's petition as seeking relief pursuant to 28 U.S.C. § 2241. *Cf. Fisher v. Rose*, 757 F.2d 789, 792 n. 2 (6th Cir.1985) (construing an improper section 2254 petition pursuant to section 2241 even though petitioner was represented by counsel).

### B.

■ We now turn to an examination of whether Dickerson is entitled to raise his speedy trial and due process claims in a federal habeas proceeding at this time. In order to be eligible for habeas relief, a petitioner must be "in custody" and must have exhausted his available state remedies. We conclude that Dickerson is "in custody" for purposes of section 2241.[10]

In *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), charges were pending in Kentucky against a petitioner who was incarcerated in Alabama. Although Kentucky lodged a detainer against him, the state refused to attempt to effect his return in the near future and to grant

\* \* \* \* \* \*
    (3) He is in custody in violation of the Constitution or laws or treaties of the United States; ....
    \* \* \* \* \* \*
For a discussion of the distinction between post-trial habeas corpus relief under section 2254 and pre-trial relief under section 2241, *see Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 503–04, 93 S.Ct. 1123, 1133–34, 35 L.Ed.2d 443 (1973) (Rehnquist, J. dissenting); *Moore v. DeYoung*, 515 F.2d 437, 441–42 (3d Cir.1975).

10. The district court had concluded that Dickerson was "in custody" for purposes of section 2254.

him a trial as he had repeatedly requested. After it became evident that the state court would do nothing, the petitioner applied for federal habeas relief; he requested that Kentucky be ordered to secure his presence for trial within sixty days or dismiss the indictment. In concluding that the petitioner was "in custody" for purposes of section 2241(c)(3), the Supreme Court reasoned that the Alabama warden was acting as the agent of Kentucky in holding the petitioner pursuant to the Kentucky detainer. *Braden*, 410 U.S. at 489 n. 4, 93 S.Ct. at 1126 n. 4. The same analysis applied to the instant case leads to the conclusion that the federal government was acting as the agent of Louisiana when it held Dickerson pursuant to the Louisiana detainer. Accordingly, Dickerson satisfies the "in custody" requirement of section 2241(c)(3).

## C.

▪ The next issue we must examine is whether Dickerson has exhausted his state remedies.[11] In discussing exhaustion in the habeas corpus context, we must distinguish between pre-trial and post-trial situations. It is only in the post-trial setting that exhaustion is mandated by statute. *Compare* 28 U.S.C. § 2254(b) *with* 28 U.S.C. § 2241(c)(3). Section 2241(c)(3), which empowers district courts to issue the writ before a judgment is rendered in a criminal proceeding, makes no reference to exhaustion. Despite the absence of an exhaustion requirement in the statutory language of section 2241(c)(3), a body of case law has developed holding that although section 2241 establishes jurisdiction in the federal courts to consider pre-trial habeas corpus petitions, federal courts should abstain from the exercise of that jurisdiction if the issues raised in the petition may be resolved either by trial on the merits in the state court or by other state procedures available to the petitioner. *See, e.g., Braden*, 410 U.S. at 489–92, 93 S.Ct. at 1126–28; *Ex parte Royall*, 117 U.S. 241, 250–54, 6 S.Ct. 734, 739–41, 29 L.Ed. 868, 871–72 (1886); *Brown v. Estelle*, 530 F.2d 1280, 1283 (5th Cir.1976). *See also Atkins v. Michigan*, 644 F.2d 543, 546 (6th Cir.), *cert. denied*, 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975 (1981); *Neville v. Cavanagh*, 611 F.2d 673, 675 (7th Cir.1979), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980); *Moore v. DeYoung*, 515 F.2d 437, 442 (3d Cir.1975).

▪ The exhaustion doctrine of section 2241(c)(3) was judicially crafted on federalism grounds in order to protect the state courts' opportunity to confront and resolve initially any constitutional issues arising within their jurisdictions as well as to limit federal interference in the state adjudicatory process. *See Braden*, 410 U.S. at 490–91, 93 S.Ct. at 1127–28; *Atkins*, 644 F.2d at 546; *Moore*, 515 F.2d at 442. *See also* Note, *Developments in the Law—Federal Habeas Corpus*, 83 Harv.L.Rev. 1038, 1094 (1970). With this background in mind, we now examine whether Dickerson's habeas petition demonstrates that he has satisfied the exhaustion requirement on either his sixth amendment claim or his due process claim, and, if so, whether he is entitled to relief on either or both. We examine each claim in turn.

### 1.

In *Braden* the Supreme Court held that the petitioner's application for habeas relief

---

**11.** Although the state raised the issue of exhaustion of state remedies in the district court, it has not explicitly raised that issue on appeal. The state obliquely raises the issue of exhaustion, however, in its discussion labelled "mootness." The state contends that the case is moot because Dickerson is getting a trial on the state's charges against him, which is the relief that he requested in state court. The state notes that Dickerson "retains, of course, the right to assert any constitutional or other rights pursuant to the now formally instituted prosecution in state court." We interpret this statement by the state in its brief as a reassertion of its argument in the district court that Dickerson has not exhausted his state remedies in regard to his contention that his sixth amendment right to a speedy trial requires dismissal of the charges against him. Accordingly, we believe the state has not waived the exhaustion requirement. *See generally McGee v. Estelle*, 722 F.2d 1206 (5th Cir.1984) (en banc) (discussing the exhaustion requirement). Furthermore, a panel of this court, in its discretion, can notice *sua sponte* the lack of exhaustion. *McGee*, 722 F.2d at 1214. Thus, the issue of exhaustion is properly before us.

could be considered despite the fact that it was brought prior to trial. After stating that the petitioner could assert a speedy trial defense when he was actually brought to trial, the Court stated:

Petitioner does not, however, seek at this time to litigate a federal defense to a criminal charge, but only to demand enforcement of [Kentucky's] affirmative constitutional obligation to bring him promptly to trial. *Smith v. Hooey*, 393 U.S. 374 [89 S.Ct. 575, 21 L.Ed.2d 607] (1969). He has made repeated demands for trial to the courts of Kentucky, offering those courts an opportunity to consider on the merits his constitutional claim of the *present* denial of a speedy trial. Under these circumstances it is clear that he has exhausted all available state court remedies for consideration of that constitutional claim, even though Kentucky has not yet brought him to trial.

*Id.*, 410 U.S. at 489–90, 93 S.Ct. at 1126 (emphasis in original).

The Court in *Braden*, however, also reiterated the long established principle "that federal habeas corpus does not lie, absent 'special circumstances', to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court." *Braden*, 410 U.S. at 489, 93 S.Ct. at 1127. The Court also stated that "nothing we have said would permit the derailing of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court." *Id.* at 493, 93 S.Ct. at 1129. The Court's discussion indicates that there is a distinction between a petitioner who seeks to "abort a state proceeding or to disrupt the orderly functioning of state judicial processes" by litigating a speedy trial defense to a prosecution prior to trial, and one who seeks only to enforce the state's obligation to bring him promptly to trial. *Brown*, 530 F.2d at 1283. In *Brown* we stated that this distinction turns upon the type of relief sought:

[A]n attempt to dismiss an indictment or otherwise prevent a prosecution is of the first type, while an attempt to force the state to go to trial is of the second. While the former objective is normally not attainable through federal habeas corpus, the latter is, although the requirement of exhaustion of state remedies still must be met.

*Brown*, 530 F.2d at 1283.

While *Brown* discusses the federalism concerns behind *Braden* in terms of the ability of a petitioner to bring a habeas petition, other courts have reached the same conclusion in terms of the exhaustion requirement. In *Atkins*, the court agreed with the distinction laid out by the *Brown* court, but applied it to the exhaustion requirement:

When [a petitioner seeks to] enforce[ ] the state's duty [to put him on trial], then, the exhaustion requirement does not necessitate a trial on the merits, as it usually does when a petitioner is claiming that his ability to defend at trial has been prejudiced.

*Atkins*, 644 F.2d at 547. Similarly, the Third Circuit in *Moore* also discussed the distinction established in *Braden* in terms of the exhaustion requirement. *Moore*, 515 F.2d at 445–46. Regardless of which framework of analysis is used, however, the result is the same: pre-trial habeas relief is generally not available to consider a petitioner's claim that a state is barred from trying him because it has violated his sixth amendment right to a speedy trial.

In this appeal Dickerson asks us to dismiss the charges pending against him in Louisiana because his sixth amendment right has been violated. Thus, in contrast to *Braden*, Dickerson seeks to "derail" the pending trial in the Louisiana state courts. *Braden*, however, specifically cautioned that its holding should not be construed as authorizing pre-trial habeas interference by federal courts in the normal functioning of a state's criminal processes. 410 U.S. at 493, 93 S.Ct. at 1128–29. Thus, it appears that habeas relief cannot be used by Dickerson to adjudicate the merits of his sixth amendment defense.

The Court recognized in *Braden*, however, that federal habeas is available to adjudicate the merits of an affirmative defense to a state criminal charge prior to a

judgment of conviction if "special circumstances" exist. *Braden*, 410 U.S. at 490, 93 S.Ct. at 1127. Thus the question is whether such circumstances exist here. Dickerson has not specifically argued that any "special circumstances" exist that would obviate the exhaustion requirement. Since he has been representing himself pro se for much of this litigation, however, we must interpret his argument liberally. The premise of Dickerson's argument is that he has a right not to stand trial. Dickerson can be seen as arguing that in order to vindicate this right, there must be some pre-trial forum available to adjudicate his constitutional claim because otherwise he would be required to go through an unconstitutional trial. Consequently, Dickerson appears to be arguing that his sixth amendment right to a speedy trial is important enough to constitute a "special circumstance" under *Braden.*

■ We decline to accept Dickerson's analysis that the sixth amendment right to a speedy trial is a per se "special circumstance" because to do so would eliminate the careful distinction drawn by the court in *Braden* and reiterated in cases like *Brown* and *Atkins* between a defendant disrupting the orderly functioning of a state's judicial processes as opposed to enforcing his right to have the state bring him promptly to trial. We know of no case authority that holds that the constitutional right to a speedy trial qualifies as a per se "special circumstance" that obviates the exhaustion requirement.[12] Indeed, the cases in which claims similar to Dickerson's have been raised have denied habeas relief on exhaustion and federalism grounds. *See, e.g., Brown*, 530 F.2d at 1282–84; *see also Atkins*, 644 F.2d at 546–47; *Moore*, 515 F.2d at 444–46.[13]

■ We also find nothing in the chronology of events of this case that persuades us to consider the merits of Dickerson's sixth amendment claim before he has been tried. The state attempted to have Dickerson extradited from federal custody after the state court had issued the arrest warrants, but federal officials refused to turn Dickerson over until after he had finished serving his sentence. Accordingly, since pre-trial habeas is not available to adjudicate the merits of Dickerson's sixth amendment defense absent "special circumstances," and since we have found no "special circumstances" which warrant pre-trial habeas relief, the district court properly denied Dickerson's motion to have the charges brought against him by Louisiana dismissed on sixth amendment grounds.[14]

12. In his dissent in *Braden,* Justice Rehnquist suggests that pre-trial habeas which interferes with state criminal processes is justified when there is a "lack of jurisdiction, under the Supremacy Clause, for the state to bring any criminal charges against the petitioner." 410 U.S. at 508, 93 S.Ct. at 1136. We need not decide in this case whether this might be the only situation in which pre-trial habeas is available.

13. Dickerson's reliance on *Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), is misplaced. In *Dickey* a defendant was convicted of a federal crime. While he was in federal prison, Florida lodged a detainer against him in connection with some state charges. While serving his federal sentence the defendant unsuccessfully made repeated requests to the Florida courts either to secure his return for a trial or to withdraw its detainer. After more than seven years had passed since the alleged crime, Florida secured the defendant's return and filed an information charging him with committing the crime. The defendant's motion to quash the information on sixth amendment grounds was rejected, and the defendant was convicted. The Supreme Court reversed, finding that the defendant's sixth amendment rights had been violated. However, *Dickey* came to the Supreme Court on direct appeal from the Florida Supreme Court and does not discuss the availability of pre-trial habeas relief to test the merits of a petitioner's sixth amendment claim that can be raised at trial.

14. We express no opinion on the merits of Dickerson's sixth amendment claim, and particularly on the question of whether the detainer filed with the federal government by Louisiana causes consequences that trigger his sixth amendment rights. *See United States v. Loud Hawk,* 474 U.S. 302, —— ——, 106 S.Ct. 648, 653–54, 88 L.Ed.2d 640, 651 (1986) (quoting *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971)) ("[O]nly the *'actual* restraints imposed by arrest and holding to answer a criminal charge ... engage the particular protections of the speedy trial provision of the Sixth Amendment'") (emphasis added in *Loud Hawk* ).

■ This conclusion does not necessarily resolve the speedy trial issue, however, for Dickerson's pro se habeas petition in the district court, read liberally, also requests that the state be ordered to grant him a prompt trial. Under *Braden* this request may be considered by pre-trial habeas provided that the state courts have had an opportunity to rule on the issue. Dickerson, however, has not exhausted his available state remedies on this issue. Although he has brought numerous motions in the Louisiana state courts requesting that Louisiana try him as soon as possible, the Supreme Court in *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), indicated that "exhaustion" means that the very issue which forms the basis for relief in the federal courts has been raised in the state court. The Court stated:

> We emphasize that the federal claim must be fairly presented to the state courts.... [I]t is not sufficient merely that the federal habeas applicant has been through the state courts. The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts.... Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts....

·  ·  ·  ·  ·

404 U.S. at 275–76, 92 S.Ct. at 512 (citations omitted). Louisiana had not yet indicted Dickerson at the time his habeas petitions were filed with the Louisiana courts; there were only two unexecuted arrest warrants outstanding. Therefore, at the time Dickerson's habeas petitions were filed with the state court, there was no trial to "speed up." We note also that Dickerson has not filed any speedy trial motions in state court since he has been arrested and indicted by Louisiana.

Since Louisiana courts could not have been presented with this issue when Dickerson filed his motions for a speedy trial, he has not exhausted his state remedies on this issue. Thus federal habeas relief is not available to Dickerson at this time.[15]

### 2.

Dickerson also argues that the five and one-half year delay between the time his alleged crimes were committed and his indictment resulted in prejudice which violated his fourteenth amendment due process rights. The statute of limitations is the principal device that protects a defendant from prejudice arising from a lapse of time between the commission of a crime and an indictment or arrest. *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *Marion*, 404 U.S. at 322, 92 S.Ct. at 464; *United States v. Harrington*, 543 F.2d 1151, 1152 (5th Cir.1976). *See also Stoner v. Graddick*, 751 F.2d 1535, 1540 (11th Cir.1985) (*per curiam*). Statutes of limitation "represent legislative assessments of [the] relative interest of the state and the defendant in administering and receiving justice." *Marion*, 404 U.S. at 322, 92 S.Ct. at 464.

■ The Supreme Court has declared, however, that the due process clause also plays a limited role in protecting against the prejudice of preindictment delay. *Marion*, 404 U.S. at 320, 92 S.Ct. at 463; *see also Lovasco*, 431 U.S. at 789, 97 S.Ct. at 2048 (1977). Where the possibility of prejudice derives from preindictment delay, a defendant in a criminal case must first resort to the applicable statute of limitations. *Marion*, 404 U.S. at 323, 92 S.Ct. at 465. Any claims of actual prejudice in violation of the due process clause of the fourteenth amendment are only examined where the applicable statute of limitations fails to offer relief for the preindictment delay. *Stoner*, 751 F.2d at 1541.

In the instant case, the only crime that Dickerson is currently charged with that has no limitation period is second degree murder. *See* La.Code Crim.Pro. art. 572 (West Supp.1987). Since there is no statute

---

**15.** The state has indicated at oral argument and in subsequent correspondence that it intends to commence Dickerson's trial as soon as possible. We trust that the state will do so; if it does not, Dickerson can, of course, bring another petition for habeas relief to enforce the state's duty to bring him to trial promptly provided he is still in custody and has exhausted his state remedies.

of limitations for second degree murder that dictates when Louisiana must commence its prosecution, the due process clause would, at some point, protect Dickerson against prejudice caused by a preindictment delay.

■ The fact that the due process clause plays some role in protecting against the prejudice of preindictment delay, however, does not mean that a petition for habeas corpus relief filed before commencement of the defendant's trial is the proper vehicle to protect this right. We believe that the same federalism reasons. that prevent a defendant's sixth amendment claims from "derailing" a pending state proceeding unless "special circumstances" exist also renders pretrial habeas corpus relief an inappropriate vehicle to consider the merits of Dickerson's due process claim. Dickerson can present both his fourteenth amendment due process claim as well as his sixth amendment speedy trial claim in the state court at trial where they can be considered.[16]

We have not found any case, nor has Dickerson cited any to us, where pre-trial habeas relief has been used to adjudicate a defendant's due process claim that could also be raised during his trial in state court. In *Lovasco*, for example, the defendant was charged with federal offenses that occurred more than 18 months before the indictment was filed. The defendant moved to dismiss the indictment due to the delay, and the district court granted the motion. Unlike the instant case, however, this issue was presented to the trial court in the normal course of the trial proceedings; the defendant was not attempting to use a pre-trial habeas petition to have his constitutional defense adjudicated.

■ Furthermore, Dickerson has failed to exhaust his state remedies in regard to his due process claim in a traditional sense. As we have already noted, Louisiana had not yet indicted Dickerson at the time his habeas petitions were filed with the Louisiana courts. Since the due process clause is concerned with preindictment delay, *see Lovasco*, 431 U.S. at 789, 97 S.Ct. at 2048; *Stoner*, 751 F.2d at 1541, this issue could not have been before the Louisiana court when it considered Dickerson's habeas petition. *Picard*, 404 U.S. at 275–76, 92 S.Ct. at 512. As with Dickerson's sixth amendment claim, we see no "special circumstances" that would lead us to deviate from *Braden*'s dictate that pre-trial habeas relief is not available to disrupt a pending state criminal trial. Accordingly, pre-trial habeas relief is not available to consider the merits of Dickerson's due process claim.

### III.

We hold that pre-trial habeas relief is not available to consider Dickerson's speedy trial or due process claims under the circumstances of this case. Federal habeas relief should not be used as a "pre-trial motion forum for state prisoners." *Braden*, 410 U.S. at 493, 93 S.Ct. at 1129. To adopt Dickerson's contentions in this case would create just such a result. After the state proceedings are concluded, federal habeas proceedings can be instituted by Dickerson after he has exhausted his state remedies.

Accordingly, the judgment of the district court is AFFIRMED.

---

**16.** As with Dickerson's sixth amendment claim, we express no opinion on the merits of his due process claim. We also express no opinion as to what Dickerson must prove in order to succeed on his due process claim. *Compare United States v. Durnin*, 632 F.2d 1297, 1299 (5th Cir. Unit A 1980) (requiring the defendant to show both actual prejudice and intentional tactical delay in order to succeed on a due process claim), *with United States v. Brand*, 556 F.2d 1312, 1317 n. 7 (5th Cir.1977) (rejecting this notion and interpreting *Lovasco* to require "a sensitive balancing of the government's need for an investigative delay ... against the prejudice asserted by the defendant."), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 663 (1978) *and United States v. Townley*, 665 F.2d 579, 582 (5th Cir.) (following a *Brand*-type balancing approach), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 3505, 73 L.Ed.2d 1307 (1982). Finally, we note that a habeas corpus remedy remains available to Dickerson after the conclusion of the state proceedings against him, if he is in custody pursuant to conviction and has exhausted his state remedies.