Enrique GARCIA, Petitioner,

v.

Juan GARZA, Sheriff of Webb County, Texas, Respondent.

Civ. A. No. L–89–45.

United States District Court,
S.D. Texas,
Laredo Division.

Dec. 18, 1989.

Oscar J. Pena Sr., Laredo, Tex., for Enrique Garcia.

Jose M. Rubio, Jr., Dist. Atty., Laredo, Tex., for Juan Garza.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending is Enrique Garcia's petition for writ of habeas corpus. Garcia is being held in custody awaiting trial on two charges arising from an episode that occurred in September 1984. The State charges that Garcia killed Police Officer David Serna and attempted to kill Police Officer Victor Ayala.

Garcia was indicted and tried for capital murder of Serna, but found guilty by a jury only of voluntary manslaughter. That conviction was then overturned because of prosecutorial misconduct. The State returned a new indictment for voluntary manslaughter, and that case is pending trial.

Subsequent to the Serna trial, Garcia was indicted for attempted capital murder of Ayala. He challenged his indictment by an application for writ of habeas corpus in state court. The district court denied the motion. The Texas Court of Appeals reversed, holding that the doctrine of collateral estoppel barred a trial for attempted capital murder. *Garcia v. State*, 718 S.W.2d 785 Tex.App.—Corpus Christi, 1985). In a split decision, the Texas Court of Criminal Appeals reversed the Court of Appeals and remanded the case for trial. *Garcia v. State*, 768 S.W.2d 726 (Tex.Crim. App.1987). The majority opinion deemed the collateral estoppel doctrine inapplicable, reasoning that since the Serna case had been reversed and was pending re-trial, there was no longer a final and valid judgment to support collateral estoppel in the Ayala case.

The majority opinion of the Texas Court of Criminal Appeals is clearly erroneous. It is true that under "the venerable, general rule," there is no double jeopardy bar to retrying a defendant who has succeeded in overturning his conviction. *Lowery v. Estelle*, 696 F.2d 333, 340 (5th Cir.1983). The "major exception to this rule," however, occurs in the case of acquittals. *Id.* If the fact-finder decides that the prosecution has not proved its case, either in whole or in part, the defendant is protected from re-prosecution to the extent of that acquittal. *Id.* The majority opinion of the Court of Criminal Appeals is contrary to the United States Supreme Court opinion in *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), a case involving almost identical facts. In *Green* the defendant was charged with first-degree murder but found guilty of second-degree murder. He appealed that conviction, and it was reversed for lack of evidence. On remand, the state again tried him for first-degree murder. The United States Supreme Court reversed, holding that the implicit acquittal of first-degree murder in the initial case barred retrial on that issue, regardless of the reversal of the second-degree murder conviction. *Green* squarely controls the instant case.

■ As stated in Judge Teague's dissenting opinion in the Court of Criminal Appeals:

> When the jury found (Garcia) guilty of voluntary manslaughter, in the Serna cause, it necessarily acquitted him of the offenses of capital murder and murder of Officer Serna. (Citations omitted). Thus, for purposes of collateral estoppel, appellant has a valid final judgment of acquittal.

768 S.W.2d at 730.

It is beyond dispute, therefore, that the State can never again try Garcia for capital murder or murder of Officer Serna. Appropriately, the State has reindicted Garcia only for voluntary manslaughter of Serna. The real question left to be decided was also correctly posed by Judge Teague as follows:

> ... whether, in finding (Garcia) guilty of voluntary manslaughter of Officer Serna, that jury also conclusively determined (Garcia's) state of mind as to the pending attempted capital murder of Officer Sam Ayala ...

768 S.W.2d at 730.

This question must be answered affirmatively.

"(W)hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *De la Rosa v. Lynaugh*, 817 F.2d 259, 263 (5th Cir.1987). Collateral estoppel bars a subsequent prosecution "only if the jury could not rationally have based its verdict on an issue other than the one the defendant seeks to foreclose." *U.S. v. Smith*, 470 F.2d 1299, 1301 (5th Cir.1973).

It is inconceivable that the jury in the Serna case acquitted Garcia of capital murder and found him guilty of voluntary manslaughter for any reason other than his mental state at the time of the shooting. *See* TEX.PENAL CODE ANN. §§ 19.03 and 19.04 (Vernon 1989). The jury concluded that Garcia caused Serna's death under the "immediate influence of sudden passion

arising from an adequate cause." § 19.04. Thus the question becomes whether any rational jury could find a change in Garcia's state of mind between firing at Serna and firing at Ayala. *De la Rosa*, 817 F.2d at 263.

In *Green v. Estelle,* 601 F.2d 877 (5th Cir.1979), the Fifth Circuit decided a case involving a single criminal incident during which two victims were killed. Green was charged with murder with malice in two indictments. At trial for the first homicide, the jury found Green guilty of murder without malice. Green then sought to collaterally estop the State from trying him for murder with malice in the second case. The court denied relief under pre-*Ashe* law. Green then pled guilty to murder with malice in the second case, but raised the collateral estoppel issue again after *Ashe* was decided. He argued that "the issue of his malice was conclusively determined in the first trial." 601 F.2d at 878. The State countered that his state of mind may have changed between the two killings. The Court ruled in favor of Green, stating:

> ... the two boys were killed almost simultaneously from a volley of shots fired into the trunk (of the car where they had been placed by Green).... The facts in connection with the two deaths are exactly the same, and Green's conduct was exactly the same. There is absolutely no evidence indicating a change in Green's intent.

601 F.2d at 879.

In the instant case, as in *Green,* no evidence indicates a change in the defendant's state of mind. The record shows that Garcia shot at the two officers within a very short, though unspecified, time period. Officer Ayala's testimony was as follows:

Q. After that first blast, Officer Ayala, who, if anyone, went down?

A. Victor Serna.

Q. Did you see that?

A. Yes, sir, he was right in front of me....

Q. After you heard that first blast, what, if anything, did you do?

A. I was moving back. Like I said, I was running and all of a sudden the blast went off, and I just started to back off, to back immediately.

Q. As you started backing off, what, if anything, did you see "Red" Garcia doing with the shotgun?

A. He saw me, he went with the shotgun like this ...

Q. Officer Ayala ... please just show the ladies and gentlemen of the jury exactly what you saw "Red" Garcia doing.

A. Okay. Blast!—I turned left, I saw him, then he saw me.

Q. .... Then what did you do, or what did he do?

A. He went like this. (Witness pumps shotgun.) ...

Q. Did you indicate for purposes of the record, Officer Ayala, that when he saw you, he cocked his shotgun once again?

A. Yes, sir.

Q. At that point in time, Officer Ayala, what, if anything did you do, sir?

A. I was going backwards. I saw that I was going to be dead next. Then I hit this wall. As I was coming back I went for my gun, sir; I fumbled it. In other words, I missed this catch. I was scared. Then the second time I went with it, I heard—Bang!—another blast....

Transcript p. 394, line 12, *et seq.*

Testimony by Officer Sergio Reyes confirms that the two shootings occurred in close temporal proximity. He states "I remember I was reaching for my handcuffs when I heard two loud blasts of a weapon." Transcript p. 631, lines 21–23.

Finally, Officer Evans' testimony provides additional support that the two blasts occurred without substantial interval:

A. I heard a loud boom, a gun blast.

Q. What action, if any, did you take?

A. I went in front of the screen door at this point, I drew my weapon, and I saw another loud boom go off.... Transcript p. 251 lines 14–17.

Based on this record, no rational jury could find that Garcia's state of mind had altered between the two shootings. This same conclusion was reached by three

judges of the Texas Court of Criminal Appeals. Interestingly, that conclusion was noted with approval by the Fifth Circuit in *De la Rosa*, 817 F.2d at 266.

Because the state is BARRED from trying Garcia for attempted capital murder of Ayala, the writ of habeas corpus is GRANTED with respect to that charge. Accordingly Respondent is ORDERED to release Garcia from custody on the State's indictment for attempted capital murder of Ayala (Cause No. 19,567). This Order does not prohibit the State from reindicting Garcia on a lesser charge not barred by collateral estoppel.

■ Garcia's petition for habeas corpus alleges a violation of his Sixth Amendment right to a speedy trial on the charge of voluntary manslaughter of Serna (Cause No. 20,722). The indictment in that case was returned on February 17, 1987. The State has offered no explanation why it has failed to prosecute this case. The petition seeks to have the indictment dismissed for the alleged Sixth Amendment violation. In a Memorandum and Order dated May 4, 1989, the Court explained that Garcia's prayer for dismissal of the indictment on speedy trial grounds was premature. *Dickerson v. State of La.*, 816 F.2d 220, 225 (5th Cir.1987).

■ As an alternative to seeking dismissal, a criminal defendant may petition for habeas relief to force the State to comply with its obligation to bring him to trial promptly. *Id.* Such relief would not be available through a federal habeas corpus petition, however, unless Garcia had exhausted all state remedies. *Id.* Respondent claims that state remedies have not been exhausted because at a state court hearing, Garcia testified that he did not want a speedy trial on the charge of voluntary manslaughter of Officer Serna. Garcia has not offered any contrary evidence. For example, there is no indication in this record that he has moved for a trial date, sought state habeas relief on this issue, nor state mandamus nor anything else. Accordingly Garcia could not press the Sixth Amendment claim in the instant proceeding even were he allowed to amend his pleadings.

■ Garcia's remaining claim is that of excessive bail. That issue is now moot in the Ayala case, but Garcia still is faced with confinement pending trial in the Serna case.

Federal courts have limited review of state bail determinations. The figure cannot be unconstitutionally arbitrary or unreasonable. *Young v. Hubbard*, 673 F.2d 132 (5th Cir.1982); *Simon v. Woodson*, 454 F.2d 161 (5th Cir.1972). Bail of $250,-000.00, as such, may not be an arbitrary amount. It becomes more problematic, however, when coupled with the State's unexplained failure to prosecute the Serna case subsequent to the February 17, 1987 indictment. This is a question which must be initially considered by the state court.

Accordingly, the Court dismisses the excessive bail claim without prejudice, but exhorts the State to meet its duty and promptly prosecute Garcia for the Serna homicide. If the State fails to do so after being squarely presented the issue, Garcia may return to federal court for relief.