# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 9, 2012

No. 11-40572

Lyle W. Cayce
Clerk

JERRY HARTFIELD,

Petitioner-Appellee Cross-Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellant Cross-Appellee

Appeals from the United States District Court
for the Eastern District of Texas

Before WIENER, ELROD, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Thirty-five years ago, a Texas jury convicted Jerry Hartfield of capital murder and sentenced him to death. On appeal, the Texas Court of Criminal Appeals unanimously reversed his conviction and sentence. The court remanded the case to the state trial court with instructions to hold a new trial. That trial has yet to occur. In 2006, Hartfield unsuccessfully sought a writ of habeas corpus from Texas courts. He then applied for a writ of habeas corpus in federal district court. The district court found fault with the continuing incarceration but dismissed Hartfield's claim without prejudice for failure to exhaust available state remedies. Both the State and Hartfield appeal. We AFFIRM.

No. 11-40572

FACTUAL AND PROCEDURAL HISTORY

In 1977, a Texas jury convicted Jerry Hartfield of the capital murder of Eunice Lowe. Jurors sentenced him to death. Hartfield appealed on numerous grounds. On September 17, 1980, the Texas Court of Criminal Appeals unanimously reversed his conviction. *Hartfield v. State*, 645 S.W.2d 436, 441 (Tex. Crim. App. 1980). The court held that the State had violated Hartfield's constitutional rights by striking a juror for cause because of her reservations about the death penalty. *See Witherspoon v. Illinois*, 391 U.S. 510 (1968); *see also Adams v. Texas*, 448 U.S. 38, 43-45 (1980) (extending *Witherspoon* to the specific procedure Texas employs in capital cases).

*Witherspoon* only affected the sentence and not the determination of guilt. Nonetheless, Texas law at the time of this conviction required an entirely new trial. *See Hartfield*, 645 S.W.2d at 441 (citing *Evans v. State*, 614 S.W.2d 414 (Tex. Crim. App. 1980)). The court did not consider Hartfield's other arguments regarding the propriety of his conviction, which also could have caused reversal.

On October 2, 1980, the State sought leave to file a motion for rehearing, urging the court to reform the sentence to life imprisonment instead of remanding for a new trial. Alternatively, the State asked for a reasonable period of time to seek a commutation of Hartfield's sentence from the Governor. On November 26, 1980, the court granted the motion for leave to file the motion for rehearing. Over two years later, on January 26, 1983, it denied the motion for rehearing in a written opinion. *Hartfield*, 645 S.W.2d at 441-42. The court expressed that Texas law and its prior holdings required it to deny the State's request to reform Hartfield's sentence to life imprisonment. *Id.* at 442. It applied this precedent, although it did so "reluctantly." *Id.* Regarding the State's request for more time to seek a commutation, the Court of Criminal Appeals referred the State to its Rule 310, which provided for a 15-day delay after a decision:

2

No. 11-40572

> When a decision of the Court of Criminal Appeals becomes final, the Clerk of the Court shall issue a mandate to the court below. A decision of the Court shall be final at the expiration of 15 days from the ruling on the final motion for rehearing or from the rendition of the decision if no motion for rehearing is filed.

*Id.*

The court also said that the State could seek a stay of the mandate for up to sixty days under its Rule 311; the State did not do so. *Id.* On January 31, 1983, five days after the court denied the State's motion for rehearing, the state trial judge, the district attorney, and the sheriff all signed a letter urging the Texas Board of Pardons and Paroles to recommend that the Governor commute Hartfield's death sentence to life imprisonment, explaining that the passage of time would make it difficult to retry him and that retrial would traumatize the victim's daughter because she would have to testify.

On February 10, the State moved for leave to file a second motion for rehearing. On March 1, the Court of Criminal Appeals denied the State's motion for leave. On March 4, it issued this mandate to the trial court:

> [I]t is ordered, adjudged and decreed by the Court that the judgment be reversed and the cause remanded for further proceedings in accordance with the opinion of this Court and that this decision be certified below for observance.

On March 14, the Board of Pardons and Paroles sent a recommendation to the Governor urging him to commute Hartfield's sentence from death to life imprisonment. The next day, the Governor issued a proclamation commuting the sentence. The Board of Pardons and Paroles notified the Court of Criminal Appeals in a letter sent with a copy of the Governor's proclamation.

The clerk of the state trial court returned two form postcards to the clerk of the Court of Criminal Appeals. The first form postcard, dated March 9, 1983, stated, "I have this day received the mandate of the Court of Criminal Appeals

No. 11-40572

in Case No. __," and had a space in which Hartfield's name and case number were written. The other form postcard, dated March 23, 1983, stated, "Please return this card when the execution of the enclosed mandate has been carried out." The date inserted in the blank for stating the date of compliance with the mandate for a new capital-murder trial was March 16, a week after the mandate was received. Further, the person who was identified as having executed the mandate for a new trial was Governor Mark White, with the notation added "Death Sentence commuted to Life by Governor."

It may have been the state trial court's view that the Governor's action was a sufficient execution of the mandate, but there was never any effort by the State or Hartfield to determine if the Court of Criminal Appeals had the same view. No caselaw has been found that in any similar circumstance, commutation did or did not suffice. For 23 years, the State treated the proclamation as effectively canceling the judgment that reversed the conviction and remanded the cause for a new trial. Seemingly, so did Hartfield.[1]

Finally, on November 14, 2006, Hartfield filed a pro se application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in state trial court. On November 27, he supplemented his first state habeas application with a claim under the Speedy Trial Clause of the Sixth Amendment to the United States Constitution. The trial court forwarded his application to the Texas Court of Criminal Appeals. On January 4, 2007, Hartfield filed a pro se petition for a writ of mandamus with that court, seeking to compel a new trial and raising his speedy trial claims again. On January 31, 2007, the Court of Criminal Appeals denied Hartfield's habeas petition and his petition for a writ of mandamus without opinion.

---

[1] The record contains an assertion that Hartfield has an IQ of 51 and is completely illiterate.

No. 11-40572

Hartfield filed a second pro se state habeas petition on April 11, 2007, arguing that his Sixth Amendment right to a speedy trial had been denied. He also argued that "he had been denied his right to appeal and that the proclamation commuting his sentence held no precedence over the court's order because it was not issued until after the court issued its mandate." The Court of Criminal Appeals dismissed this second habeas application on May 30, 2007, again without opinion, as a subsequent application under Article 11.07 § 4(a)-(c) of the Texas Code of Criminal Procedure.

On October 22, Hartfield filed a pro se federal habeas application in the United States District Court for the Southern District of Texas. The court referred the application to a magistrate judge. The magistrate judge appointed a federal public defender as counsel for Hartfield. Hartfield claimed that he had been deprived of a new trial following the resolution of his direct appeal by the Court of Criminal Appeals, in violation of his rights under the Speedy Trial Clause of the Sixth Amendment as well as the Due Process Clause of the Fourteenth Amendment. The State moved for summary judgment, urging dismissal based on the one-year statute of limitations provision contained with the Antiterrorism and Effective Death Penalty Act (AEDPA). That provision imposes a "1-year period of limitation . . . to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The magistrate judge ordered supplemental briefing to address "whether petitioner Jerry Hartfield is in custody 'pursuant to the judgment of a State court.'"

The magistrate judge concluded that Hartfield was not being held under the authority of a state-court judgment. That conclusion in essence meant that Hartfield had been held since 1983 without a judgment of conviction and was still awaiting trial. His petition, then, was actually a pre-conviction habeas petition under 28 U.S.C. § 2241. The magistrate judge recommended the district

5

No. 11-40572

court hold that the AEDPA's statute of limitations did not apply to the claim. He also recommended that Hartfield's case be transferred to the Eastern District of Texas because venue for a Section 2241 petition is in the district where the prisoner is held rather than in the district where he was convicted. The district court agreed and transferred Hartfield's case to the United States District Court for the Eastern District of Texas.

A magistrate judge in the Eastern District agreed with the Southern District's conclusion that Hartfield's petition was a pretrial petition under Section 2241 and also concluded that Hartfield had failed to exhaust state-law remedies. Consequently, he recommended dismissing Hartfield's petition without prejudice to allow him to bring his claims properly before the state court. The district court adopted the magistrate judge's memorandum and recommendation. It held that Hartfield was not in custody pursuant to a state-court judgment so his claims were not time-barred. The court also held that Hartfield's claims were not properly before it because he had yet to seek relief from the state trial court, instead taking the procedurally improper step of directly asking the Court of Criminal Appeals for relief. The district court therefore dismissed Hartfield's claims without prejudice.

Both parties appeal. Texas challenges the conclusion that Hartfield is not "in custody pursuant to the judgment of a State court" while Hartfield disagrees with the district court's application of the exhaustion doctrine.

## DISCUSSION

This case largely turns on the rarely litigated issue of whether the source of authority for this inmate's current incarceration is what a federal habeas statute calls a "judgment of a State court." *See* 28 U.S.C. § 2244(d)(1). If there is a state court judgment, Hartfield has filed his petition in federal court well beyond the one-year limit from the date that "judgment became final by the

6

No. 11-40572

conclusion of direct review." *Id.* The judgment of the Court of Criminal Appeals became final in 1983, and the petition was filed in 2006.

We frequently review inmates' claims that are brought as applications under Section 2254. In those situations, we give "substantial deference" to the challenged rulings of the state courts. *Register v. Thaler*, 681 F.3d 623, 627 (5th Cir. 2012). This appeal arises under Section 2241 and involves a challenge to the constitutionality of imprisonment without trial. There is no state-court decision to which we can defer. *See Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011). Instead, we review *de novo* the imprisonment of an individual due to the commands of the Executive alone. "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

## I.    *Judgment of the State Trial Court*

The State insists that Hartfield is being held pursuant to the 1977 judgment of the state trial court, which was then appealed, reversed, and, maybe, revived in some way by the Governor's order and the Texas Court of Criminal Appeals' silence. Two magistrate judges and two district courts have already disagreed, determining that the reversal of Hartfield's conviction by the Court of Criminal Appeals in 1980 eliminated the 1977 judgment of conviction, and it remained eliminated even after the proclamation by the Governor.

The State asserts that the reversal by the Court of Criminal Appeals was contingent and was nullified when the Governor commuted Hartfield's sentence. No Texas Court of Criminal Appeals decision regarding Hartfield has so stated. Indeed, the only time commutation was mentioned by that court was in 1983, when the court on rehearing quoted from the State's brief that it wanted time to seek a commutation. *See Hartfield v. State*, 645 S.W.2d at 442.

No Texas court has ever assessed how the events in this case affect the judgment of conviction. The issue is a question of law which we consider *de novo*. *See United States v. Willingham*, 310 F.3d 367, 370-71 (5th Cir. 2002). We

7

apply Texas law.  The caselaw to apply is that which comes from the state's highest court.  *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010).  In Texas criminal cases, the highest judicial authority is the Texas Court of Criminal Appeals.  Tex. Const. art. V, § 1.  If the court's caselaw is silent on the issue, we must make an *Erie* guess.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  "When making an *Erie* guess, our task is to attempt to predict state law, not to create or modify it."  *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011).

There is no dispute that Hartfield was in state custody pursuant to a judgment between the date he was convicted in the trial court and the date the resolution of his appeal by the Texas Court of Criminal Appeals became final.  On direct review of Hartfield's conviction, the court in 1980 concluded "that the judgment must be reversed and the cause remanded for a new trial."  *Hartfield*, 645 S.W.2d at 441.  The Court of Criminal Appeals has compared such a ruling to a grant of a new trial by the trial court:

> When the judgment of the appellate court reverses the judgment of the trial court and grants a new trial to the defendant, the cause shall stand as it would have stood in case the new trial had been granted by the trial court, and if in custody and entitled to bail the defendant shall be released upon his giving bail.

*Ex parte Nickerson*, 893 S.W.2d 546, 548 (Tex. Crim. App. 1995) (quoting then Tex. R. App. Proc. 87(b)(2)).  Additionally,

> the effect of granting a new trial is to restore the case 'to its position before the former trial.'  This means no finding of guilt and no sentence exist.  No conviction remains when the case is restored to a position before the former trial, unlike the situation when a defendant has been convicted and the case is pending on appeal.

*Id.* (quoting then Tex. R. App. Proc. 32).

The State does not dispute the conclusion that a judgment that has been finally reversed no longer exists.  It does argue that the reversal was at least

implicitly contingent.  Events such as commutation might cancel the reversal. The Court of Criminal Appeals never so held, and no one asked it to do so.  Yet the State persists.  Even if plausible arguments exist that the judgment remained reversed, the State essentially posits these are just arguments that need to be brought in a timely manner in in federal court.

There was enough of a judgment, it asserts, perhaps faded and tattered as a result of the Court of Criminal Appeals reversal but still in view because of the unsettled effects of the Governor's action, to leave Hartfield "in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  Until a court definitively declares the judgment post-commutation still to be reversed, the State argues there is still a court judgment that holds Hartfield in place. Consequently, Hartfield is attacking the validity of the 1977 state-court judgment, and his claim is governed by Section 2254.  *See Carmona v. Andrews*, 357 F.3d 535, 537 (5th Cir. 2004).

The State raises a legitimate legal question.  If we agree with the district court that the judgment of conviction remained reversed after the commutation, that is a judicial ruling being made for the first time by federal judges.  Does that mean Hartfield was being held pursuant to a questionable judgment but not without any judgment at all?  Is being held "pursuant to" a judgment a question of whether the existence of a judgment is plausible or can be supported by good faith arguments?  The statute certainly does not say that the custody must be "pursuant to a *valid* judgment."

The State sees the claimed deficiency here as no different than the usual claims made by prisoners that their judgments of conviction are facially valid but substantively defective.  The State's argument is not frivolous, but we conclude that the answers are clear and contrary to the State's position.

We first examine what courts that have considered Hartfield's claims have done.  By the plainest of terms, the Texas Court of Criminal Appeals reversed

the conviction and remanded for a new trial.[2] The final action by that court was to deny rehearing on March 1, 1983, and to issue its mandate on March 4, requiring a new trial. No state court has thereafter acted. The Governor acted, but he was acting not under a condition of the court's judgment that explained what the result of those actions would be, such as a reinstatement of the conviction. A postcard from a state trial court clerk notified the higher court that the clerk apparently considered the mandate satisfied by something other than what the mandate said. No court, though, ever said – either prior to the Governor's actions or afterwards – that the reversal and remand for new trial would be a nullity if the Governor commuted the sentence.

The State argues, though, that the district court clerk was correct. By reading the later Executive proclamation with the reasons for the earlier reversal, the prior judgment of conviction was, in effect, reinstated. The State asserts that the order denying rehearing provided it with a vehicle to salvage the conviction. The court's 1983 order acknowledged that the State's petition for rehearing requested "a reasonable time to seek commutation of 'sentence' from the Governor.'" *Hartfield*, 645 S.W.2d at 442.

The State is correct about what the court stated. The court also said that the "decision of the Court shall be final at the expiration of 15 days from the ruling on the final motion for rehearing or from the rendition of the decision if no motion for rehearing is filed." *Id.* (quoting then Tex. Cr. App. R. 310). A "15 day period between the rendition of our decision and the date that the mandate issues is a 'reasonable time to seek commutation of sentence from the Governor.'" *Id.* The order issued on January 26, 1983. Despite the 15-day period between decision and mandate mentioned in the order, the court's mandate did not issue

---

[2] Part of the State's argument relies on its assertion that authorities have acted on the good faith belief that an actual judgment exists. We conclude Section 2244(d)(1) does not give weight to the subjective understanding of various officials of whether there is a judgment.

until March 4. Even with that delay, the Governor did not act in time. His proclamation came on March 15. Thus, we need not decide whether a timely proclamation would have reanimated the judgment of conviction.

The State argues that we are counting incorrectly. It asserts that the 15-day calendar commenced with the court's denial on March 1 of the State's second motion for leave to file a petition for rehearing. The court rule, though, starts the count when the final rehearing motion is denied, not when the final motion for leave to file a motion is denied. There was only one motion for rehearing. A judgment must be final at some point. According to state law, that point is "15 days from the ruling on the final motion for rehearing." *Id.* The Governor's proclamation was not speedy enough.

We also adopt the reasoning of Magistrate Judge Smith that by the time the Governor acted on March 15, the mandate reversing the conviction and sentence had already issued on March 4. There was no longer a death sentence to commute, and thus the Governor's order could not have had any effect.

The State raised an alternative argument for the eventuality that we would hold, and we just did, that the judgment of conviction remained reversed after the commutation. It asserted that because the holding about the judgment is a decision being made definitively only now, we still should view Hartfield's incarceration as being pursuant to a judgment. The State argues that what we have resolved is a dispute about a judgment, no different in kind than other assaults on judgments of convictions brought every day by prisoners. When those petitioners succeed in their claims, they do not then have an additional claim that their prior custody has not been pursuant to a judgment.

The State would categorize our holding about the 1977 state-court judgment as one reached under Section 2254. There is an important difference here, though. The district court sought to identify the difference when it held the 1977 judgment was a "nullity." We do not adopt that label. Our resolution

does not turn on whether the judgment after the reversal and issuance of a mandate was null, or void as compared to voidable, or some other absolute versus qualified label. What controls is that the highest court in Texas for Hartfield's claims reversed the judgment of conviction and ordered a new trial. The State is not so bold as to argue that if no commutation had been granted, yet Hartfield still received neither a new trial nor his freedom, that this would be a run-of-the-mill dispute subject to the AEDPA time bar. Instead, they argue that non-judicial acts altered the judgment of the Texas Court of Criminal Appeals that reversed the conviction.

We cannot agree. The mandate from the Texas Court of Criminal Appeals reversed the judgment of conviction. No court entered any order thereafter to alter that reversal. The events that allegedly make this simply a dispute about a possibly reversed judgment were not judicial acts. They were acts of another branch of government with no authority to alter the rulings of courts. Had the Court of Criminal Appeals stated in its original decision that a commutation would reinstate the judgment, or had a motion been filed after the commutation that sought a ruling on the effect of the commutation, the court's explanations would largely control. Controlling instead is the unrevised final act of the highest Texas court, which was to reverse the judgment of conviction.

Hartfield is not "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). Hartfield's claim encounters no time bar.

*II.    Exhaustion*

Even though Hartfield's claim is not time-barred, it has not yet been properly presented in state court. Unlike Section 2254, Section 2241 does not contain an explicit requirement that claims first be exhausted in state court. This circuit, though, has held that Section 2241 claims should not be brought in federal court until available state remedies are fully pursued. *Dickerson v. Louisiana.*, 816 F.2d 220, 225 (5th Cir. 1987). "[F]ederal courts should abstain

from the exercise of [their] jurisdiction if the issues raised in the petition may be resolved either by trial on the merits in the state court or by other state procedures available to the petitioner." *Id.* Exhaustion is significant. It embodies the principles of federalism by guarding "the state courts' opportunity to confront and resolve initially any constitutional issues arising within their jurisdictions as well as to limit federal interference in the state adjudicatory process." *Id.*

Exceptional circumstances might exist in which exhaustion is excused. *See Deters v. Collins,* 985 F.2d 789, 795-96 & n.15 (5th Cir. 1993). We do not consider this case, despite the extraordinary delay, to provide the exceptional conditions that excuse exhaustion under Section 2241.

Hartfield initially pursued relief in state court. In November 2006, he filed a habeas application asserting his speedy trial claim with the Texas Court of Criminal Appeals. On January 4, 2007, he sought a writ of mandamus from that court. On January 31, the court denied both applications without written order. Hartfield filed another state habeas application with the Court of Criminal Appeals, which it dismissed as an invalid subsequent application.

Hartfield's procedural steps were actually missteps. A petitioner who seeks to assert a pre-conviction speedy trial claim should first "file a motion to set aside the indictment in the trial court, pursuant to Article 27.03 of the Texas Code of Criminal Procedure." *Smith v. Gohmert*, 962 S.W.2d 590, 592 (Tex. Crim. App. 1998). Then, "if the trial court erroneously denied the motion, the defendant could appeal from any conviction that resulted from the continued prosecution." *Id.* If the trial court impermissibly delays ruling on the motion, the defendant can seek a writ of mandamus. *See Chapman v. Evans*, 744 S.W.2d 133, 138 (Tex. Crim. App. 1988); *see also Thomas v. Stevenson*, 561 S.W.2d 845 (Tex. Crim. App. 1978). Hartfield has yet to file any motion with the proper state court and therefore has failed to exhaust his state remedies.

No. 11-40572

Hartfield argues that his failure to exhaust is not a bar now because exhaustion would be futile. We have held that when "seeking state remedies would be futile, the exhaustion requirement is excused." *Deters*, 985 F.2d at 795 n.16. The exception for futility exists because there is little reason to have an individual take the time to assert claims in state court when it is a foregone conclusion that the claims will be denied. *Dilworth v. Johnson*, 215 F.3d 497, 501 n.3 (5th Cir. 2000). The concern about unnecessary delay is undeniably present here, given the length of time that has already passed.

Nonetheless, Hartfield has not established that the decision by the state court is preordained. We have resolved that beginning in 1983, the obligation to provide a new trial has existed. There is no valid judgment that supports incarceration. The Texas court's denials of Hartfield's petitions for writs of habeas corpus and mandamus were proper in light of his procedural missteps. Those denials do not support Hartfield's insistence that the Texas courts will inevitably deny his speedy trial claims.

Hartfield also argues we should waive the exhaustion requirement or the need to establish futility, asserting no meaningful state process exists. We have concluded that Texas provides a corrective process that is available to Hartfield. With that process in place, no reason has been shown to upset the principles of comity and federalism that guide our analysis. The district court did not err.

AFFIRMED.