IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 98-60013

———————————

JOSEPH JONES,

                                        Plaintiff-Appellee,

versus

CITY OF JACKSON ET AL.,

                                        Defendants,

MALCOLM McMILLIN and LES TANNEHILL,

                                        Defendants-Appellants.

———————————

Appeal from the United States District Court
for the Southern District of Mississippi

———————————

February 14, 2000

Before EMILIO M. GARZA, DeMOSS, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

     Malcolm McMillin and Les Tannehill appeal the district court's denial of their motion for summary judgment, in which they claimed qualified, absolute and sovereign immunity from Joseph Jones's causes of action brought pursuant to 42 U.S.C. § 1983 and Mississippi state law. We affirm in part, reverse in part and remand the case to the district court for further proceedings.

**I. FACTS AND PROCEDURAL HISTORY**

     For purposes of this appeal we assume the truth of the following facts.

1

In October 1991, Jones entered guilty pleas to three separate burglary counts.  In the first count, Cause No. 4255, Jones was sentenced to two years of incarceration and five years of probation.  The other counts, Cause Nos. 4256 and 4257, were left as open pleas, the sentences to be determined at a later time.  On February 24, 1993, after Jones had completed his two years in prison and been released to serve the probated portion of his initial sentence, Judge Breland Hilburn, Circuit Judge of Hinds County, Mississippi, issued a bench warrant for Jones's arrest for failure to appear for sentencing in Cause Nos. 4256 and 4257.  The basis for the issuance of the bench warrant is variously characterized as a "clerical error" and "probation violation" by the parties on appeal.

On Sunday, June 5, 1994, a City of Jackson police officer stopped Jones for a routine traffic violation.  The officer arrested Jones for an outstanding warrant on a simple assault charge and for operating a motor vehicle without a license and took him to the Jackson City Jail.  The next day, June 6, 1994, Hinds County[1] Sheriff's Deputy Les Tannehill sent a facsimile copy of a bench warrant to the Jackson City Jail requesting that a detainer be placed in Jones's file based on the bench warrant issued earlier by Judge Hilburn.  Malcolm McMillin, Sheriff of Hinds County, had no personal involvement with Jones other than his official responsibilities to devise and enforce policy for Hinds County.  On Tuesday, June 7, 1994, Jones attended a hearing before the City of

---

[1]The city of Jackson is in Hinds County, Mississippi.

Jackson Municipal Court wherein the charges of simple assault and driving without a license brought by the City of Jackson were dismissed when the City of Jackson determined that it had arrested the wrong person. However, Jones remained incarcerated in the Jackson City Jail on the basis of the detainer lodged by Tannehill. The City of Jackson continued to incarcerate Jones until June 20, 1994, when he was transferred from the Jackson City Jail to the Madison County Jail.

At the time, the City of Jackson and Hinds County Jail systems were under federal court order to relieve overcrowding. Jackson and Hinds County entered into an Interlocal Agreement with Madison County, Mississippi to house Jackson's extra prisoners for a fee. The agreement allocated a set number of prisoner beds to Jackson and Jackson agreed to "sublet" their unused beds in Madison County Jail to house Hinds County's extra prisoners. The cost of Jones's incarceration was billed daily to Hinds County, who reimbursed the City of Jackson for their payments to Madison County.

Jones remained in the Madison County Jail as a result of the Hinds County detainer, without hearing or court appearance, until March 6, 1995. After nine months, Jones was brought into state district court in Hinds County, Mississippi and Judge Hilburn entered an order dismissing all affidavits for probation violation, terminating Jones's probation, dismissing and vacating all detainers and charges placed on Jones by Hinds County or the Jackson Police Department and ordered the Hinds County Sheriff's Office to "immediately RELEASE the Defendant from custody."

On June 7, 1996, Jones filed a complaint in Mississippi state court against the City of Jackson, Hinds County and numerous individual defendants, alleging that the defendants violated his constitutional rights and various state laws by detaining him in 1994-95. Jones dismissed Hinds County without prejudice and the remaining defendants removed the case to federal court. Tannehill and McMillin filed a motion for summary judgment on the basis of absolute, qualified and sovereign immunity. The district court denied summary judgment in a one-page order.

## II. DISCUSSION

### A. JURISDICTION AND STANDARD OF REVIEW

Jones argues that we do not have jurisdiction over this appeal. Typically, denials of qualified immunity, although not final orders, are immediately appealable under the collateral order doctrine set forth in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). This doctrine allows an immediate appeal from orders denying summary judgments based on qualified immunity as a matter of law. *See Mitchell v. Forsythe*, 472 U.S. 511, 530 (1985). "If disputed factual issues material to summary judgment are present, the district court's denial of summary judgment on the basis of immunity is not appealable." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 431 (5th Cir. 1993)(quotation and citations omitted). Jones maintains that there is no way to determine whether facts or law formed the basis for the district court's denial of summary judgment and that this court is therefore without jurisdiction to review it on interlocutory appeal.

4

When the district court fails to make findings of fact and conclusions of law, the appellate court will "undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the non-moving party, likely assumed." *Behren v. Pelletier*, 516 U.S. 299, 313 (1996). Having performed the requisite record review, we conclude that this appeal presents questions of law, not fact,[2] and is therefore immediately appealable. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

This court reviews the denial of a motion for summary judgment *de novo* using the same criteria applied by the district court in the first instance. *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991).

## B. IN CUSTODY

No one disputes that Jones was imprisoned for nine months. However, Appellants contend that Hinds County did not have "custody" of Jones. Who was responsible for Jones's illegal detention and whether or not that detention gave rise to constitutional protections are mixed questions of fact and law that go to the gravamen of Jones's suit.

Under Mississippi law, if a Hinds County prisoner is housed in a different county due to over-crowding, Hinds County remains responsible for his custody. *See Lee v. State of Mississippi*, 437

---

[2]The record reveals that material issues of fact remain as well, particularly concerning the question of which individual or individuals caused the alleged constitutional violations. To the extent the parties' arguments are bottomed on factual question of causation, we have no jurisdiction to resolve their disputes.

5

So.2d 1208, 1209 (Miss. 1983) (interpreting § 47-3-1 MISS. CODE ANN. (1972). Further, a Mississippi prisoner awaiting trial on a criminal charge in one county is entitled to credit for time served in another county so long as a detainer is lodged in the prisoner's file by the first county. *See id.* In addition, we find it significant that the Mississippi Circuit Court order directed Hinds County to release Jones, which order successfully gained his freedom.

This court has similarly held that a prisoner incarcerated in one jurisdiction subject to a detainer from a different jurisdiction is "in custody" of the second jurisdiction for purposes of federal habeas corpus statute, 28 U.S.C. § 2241(c)(3)(1994). *See Dickerson v. State of Louisiana*, 816 F.2d 220, 224-25 (5th Cir. 1987). *Dickerson* relied on *Braden v. 30th Judicial Court of Kentucky*, 410 U.S. 484 (1973), in which the Supreme Court concluded that a state placing a detainer on the petitioner who was incarcerated in another jurisdiction had "custody" of him for habeas corpus purposes. *See id.,* 410 U.S. at 489 n.4.

Based on the unanimous jurisprudence of Mississippi, the Fifth Circuit and the Supreme Court, we conclude that Jones has alleged facts sufficient to establish that Hinds County had custody of Jones. McMillin and Tannehill, named in their individual and official capacities, allegedly caused Hinds County's exercise of illegal custody over Jones by affirmative acts (e.g., sending the detainer to Jackson City Jail) and omissions (e.g., failing to take

6

Jones before the Circuit Court of Hinds County as the Bench Warrant commanded).

**C. QUALIFIED IMMUNITY**

The first inquiry in examining a defense of qualified immunity asserted in a motion for summary judgment is whether the plaintiff has alleged "the violation of a clearly established constitutional right." *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). The second step is to "decide whether the defendant's conduct was objectively reasonable" in light of the legal rules clearly established at the time of the incident. *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993).

**1. Clearly established constitutional rights**

Jones alleged that his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated when he was held pursuant to a detainer issued by the Hinds County Sheriff's Office and placed in his file by defendant Tannehill and was not brought before a judge or magistrate for over nine months.

**a. Fourth Amendment**

Jones's Fourth Amendment allegations fail because he admitted that a facially valid bench warrant existed in Hinds County on the date the detainer was sent to Jackson City Jail. The original seizure was therefore pursuant to a valid court order. "Fourth Amendment claims are appropriate [only] when the complaint contests the method or basis of the arrest and seizure of the person." *Brooks v. George County, Miss.*, 84 F.3d 157, 166 (5th Cir. 1996). The protections offered by the Fourth Amendment do not apply if the

7

plaintiff challenges only continued incarceration. *Id.* We must therefore reverse and render summary judgment for Tannehill and McMillin on Jones's Fourth Amendment Claims.

**b. Fifth Amendment**

Jones's Fifth Amendment claim of a denial of his right to due process must also fail. The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor. *See Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Jones has not alleged that McMillin or Tannehill were acting under authority of the federal government. Tannehill and McMillin are entitled to summary judgment on Jones's Fifth Amendment Claims.

**c. Sixth Amendment**

Jones raised two alleged violations of the Sixth Amendment: denial of his right to counsel and denial of his right to be informed of the charges against him. The right to counsel guaranteed by the Sixth Amendment attaches when adversary proceedings are commenced against the defendant. *United States v. Gouveia*, 467 U.S. 180, 187-188 (1984). A defendant's right to be informed of the nature and cause of an accusation brought against him does not exist until the Government is committed to a prosecution. *Kladis v. Brezek*, 823 F.2d 1014, 1018 (7th Cir. 1987). The bench warrant underlying the detainer was based on Jones's alleged failure to appear for sentencing on two burglary charges. Certainly the Government was "committed to a prosecution" of these two charges and the Sixth Amendment rights to be informed

8

of the charges and to be represented by counsel had attached. We will therefore affirm the denial of qualified immunity on Jones's Sixth Amendment claims.

### d. Eighth Amendment

Jones alleged that his incarceration constituted cruel and unusual punishment in violation of the Eighth Amendment. "'The primary purpose of [the Cruel and Unusual Punishments] clause has always been considered . . . to be directed at the method or kind of punishment imposed for the violation of criminal statutes . . . .'" *Ingraham v. Wright*, 430 U.S. 651, 667 (1977)(*quoting Powell v. Texas*, 392 U.S. 514, 531-532 (1968)). Jones, complaining about the fact of his incarceration rather than its conditions, fails to state a cause of action under the Eighth Amendment. We therefore reverse the denial of qualified immunity from Jones's Eighth Amendment claims.

### e. Fourteenth Amendment

Jones has also alleged violations of his Fourteenth Amendment due process rights, which are protected from unconstitutional actions by state actors. *See DeShaney v. Winnebago Co. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Prohibition against improper use of the "formal restraints imposed by the criminal process" lies at the heart of the liberty interests protected by the Fourteenth Amendment due process clause. *See Board of Regents v. Roth*, 408 U.S. 564, 575 (1972). The Fourteenth Amendment's protection of Jones's liberty interest was clearly established in 1994-95, and Jones's alleged nine month detention without proper

due process protections was not objectively reasonable in light of the clearly established legal rules. We must therefore affirm the denial of qualified immunity as to Jones's Fourteenth Amendment claims.

**STATE LAW CLAIMS**

McMillin and Tannehill also appeal the denial of summary judgment for state-law claims against them. Under Mississippi law, an exemption for the waiver for sovereign immunity exists if the defendants are government officials acting in the course and scope of their employment and the complainant was incarcerated at the time of the alleged acts. MISS. CODE ANN. § 11-46-9(1)(m) (1972). Jones was incarcerated at the time of the events at issue, and he has not alleged any facts that would tend to show that McMillin and Tannehill were not acting in the course and scope of their employment. Therefore, McMillin and Tannehill should have been granted summary judgment based on sovereign immunity for state-law claims filed against them by Jones.

**CONCLUSION**

We AFFIRM the denial of qualified immunity as to Jones's Sixth and Fourteenth Amendment claims, and REMAND this case to the district court for further proceedings. We REVERSE the district court and grant Tannehill and McMillin qualified immunity on Jones's Fourth, Fifth and Eighth Amendment claims. Finally, we REVERSE the denial of summary judgment for defendants on Jones's state law claim.

AFFIRMED in part, REVERSED in part, and REMANDED.

10

EMILIO M. GARZA, Circuit Judge, concurring in part and dissenting in part:

I agree with those portions of the majority opinion which find that Hinds County Sheriff Malcolm McMillan and Deputy Sheriff Les Tannehill are entitled to qualified immunity on most of Joseph Jones's federal law claims against them. I also agree that McMillan and Tannehill are entitled to sovereign immunity for Jones's state law claims. Accordingly, I concur with the opinion's partial reversal of the lower court's denial of summary judgment. However, the opinion affirms the district court's denial of qualified immunity on Jones's Sixth and Fourteenth Amendment claims. I dissent from this portion of the opinion because Jones has not shown that either McMillan or Tannehill violated his clearly established rights.

Public officials acting within the scope of their official duties are shielded from liability by qualified immunity. *See Kipps v. Caillier*, — F.3d —, 1999 WL 1115448, at *2 (5th Cir. Dec. 6, 1999). Qualified immunity applies unless: (1) the plaintiff alleges the violation of a clearly established constitutional right, and (2) the defendant's conduct was objectively unreasonable. *See Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). Additionally, the record must at least "give[] rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly-established right." *Kipps*, 1999 WL 1115448, at *2 (quoting

11

*Morris v. Dearborne*, 181 F.3d 657, 666 (5th Cir. 1999)).  Once the defendant invokes qualified immunity by pleading good faith and shows that he was acting within the scope of his discretionary duty, the burden shifts to the plaintiff to show that the defendant violated clearly established law.  *See Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992).

The evidence before the district court on summary judgment consisted of affidavits from McMillan and Tannehill, which they submitted in support of their motion.[3]  McMillan's affidavit states that he had no knowledge of Jones's case until Jones served him with the complaint.  Tannehill's affidavit states that he sent a written detainer request to the Jackson City Jail after noticing that Judge Hilburn had an outstanding bench warrant for Jones, and that he then informed Judge Hilburn's court administrator about the detainer.[4]

The evidence does not show that an act of either McMillan or Tannehill harmed Jones; he has not identified a policy of McMillan's which harmed him[5] and he has not shown that Tannehill's

---

[3]     Jones apparently responded to their motion, but he did not file his response and thus  it is not before us. *Cf.United States v. Coveney*, 995 F.2d 578, 587-88 (5th Cir. 1993) (discussing the appellee's responsibility to ensure that the record is complete).

[4]     On appeal, Jones disputes whether Tannehill actually notified Judge Hilburn's administrator that he had placed the detainer.  He also alleges that "[t]his type of act occurred on numerous occasions prior to Joseph Jones [*sic*] dilemma" and that "[a]ll of the aforementioned actors were aware of the prior occurrences, remedial measures were not taken, or if they were taken, they were wholly inadequate."  Because he does not support these allegations with evidence, they do not raise genuine issues of material fact. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (stating that the nonmovant's burden of responding to the movant's showing that there are no genuine issues of material fact "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.") (citations and quotations omitted).

[5]     McMillan's only "policy" which Jones specifically identifies is the space-sharing agreement with Madison County under which Jones was transferred to the Madison County Jail.  Jones fails to show that this policy was facially improper or that it was applied to him improperly.

12

placement of the detainer on him was improper. Instead, he attempts to show that, by virtue of their positions and because Tannehill placed the detainer on him, they owed him duties which they did not perform, thereby violating his rights.

Jones has not identified a legal duty McMillan owed him which he did not carry out. He argues that McMillan was deliberately indifferent to his rights, *see, e.g.*, *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988) ("[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable . . . . The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see."), but he makes no showing that McMillan knew about his situation, knew similar events had occurred, or failed to take reasonable steps to prevent Jones's lengthy detention from occurring.

Jones also suggests that McMillan violated duties he owed Jones by virtue of the "special relationship" between the state and a prisoner. *See generally DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005, L. Ed. 2d , __ (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). He fails to show, as a legal or factual matter, that this "special relationship" existed here. Significantly, he does not rely on Mississippi law vesting sheriffs with certain responsibilities over county jails to argue

13

that McMillan was responsible for his custody, *see* Miss. Code Ann. § 47-1-49 ("The sheriff shall have charge of the . . . jail of his county . . . and of the prisoners in said jail."), presumably because Jones was in a city rather than a county jail, *see id.* § 47-1-49 ("In the case of a jail owned jointly by a county and municipality, . . . the governing authorities of the county and municipality are hereby vested with full and complete authority, jurisdiction and control over such jointly owned jail facility and the governing authority of the municipality may appoint a jailer who shall be responsible for all municipal prisoners lodged in said jail in the same manner in which the sheriff is responsible for state prisoners . . . ."). The state law he does rely on, Miss. Code Ann. § 47-3-1, applies when a prisoner is placed in a jail outside the arresting jurisdiction. It directs "the sheriff of the county *to which the prisoner is so removed* . . . to have the body of the accused, without further order, before the proper court of the proper county, at its next term thereafter, on the first day of the term." *Id.* (emphasis added). Because McMillan was not the sheriff in the county to which Jones was removed, § 47-3-1 imposed no duty on him. Similarly, § 99-3-17, which directs "[e]very person making an arrest [to] take the offender before the proper officer without unnecessary delay for examination of his case," *id.* § 99-3-17, does not apply because McMillan and Tannehill did not arrest Jones. *Cf. United States v. Hausman*, 894 F.2d 686, 688-89 (5th Cir. 1990) (concluding that a federal detainer was not equivalent to an arrest for purposes of the Speedy Trial Act).

14

Jones's allegations against Tannehill also fail. Tannehill had no greater duty as Deputy Sheriff than McMillan had as Sheriff, and thus his position alone does not render him responsible for Jones. Additionally, Jones has not shown that Tannehill had a general legal duty to follow up on the detainer he lodged, and Jones does not allege facts which might establish a specific duty to do so here.[6]

Qualified immunity is a shield from civil liability for "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271, __ (1986). Accordingly, we "resolv[e] immunity questions at the earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589, __ (1991) to ensure that the immunity properly shields those it is meant to protect. Because the majority opinion undermines this protection by allowing claims against McMillan and Tannehill to proceed even though there is no evidence in the record which suggests that they violated Jones's clearly established rights, I dissent from this portion of the majority's opinion.

---

[6] For example, Jones does not allege that Tannehill was notified that the other charges against Jones were dropped, and that Jones was therefore only being held because of Tannehill's detainer. Nor does he allege that Tannehill improperly documented the detainer such that Jones's case was "lost in the shuffle." To the contrary, Tannehill's affidavit states that he promptly notified the court administrator upon placing the detainer. (As noted, Jones disputes this, but he does so without citing evidence on which we could rely.)

15