# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01724-SCT

*YOSHINO LOVE*

*v.*

*SUNFLOWER COUNTY SHERIFF'S DEPARTMENT, NED HOLDER, IN HIS OFFICIAL CAPACITY AS SHERIFF OF SUNFLOWER COUNTY, BILLY WEEKS, IN HIS OFFICIAL CAPACITY AS JAIL ADMINISTRATOR OF THE SUNFLOWER COUNTY JAIL, AND HAROLD KEYES, IN HIS OFFICIAL CAPACITY WITH THE SUNFLOWER COUNTY JAIL*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/05/2002 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GLORIA MARIA GARDNER |
| | EDUARDO ALBERTO FLECHAS |
| | JAMES D. BELL |
| | GERALD GAGGINI |
| ATTORNEY FOR APPELLEES: | ROBERT JOSEPH MIMS |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 12/04/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Yoshino Love appeals from the Sunflower County Circuit Court's summary judgment dismissing

his suit against the Sunflower County Sheriff's Department, Sheriff Ned Holder, and other employees of

the Sheriff's Department.[1] In granting the Sunflower County defendants' motion for summary judgment, the circuit court held that Love's claims were barred under the Mississippi Torts Claims Act, Miss. Code Ann. § 11-46-9(1)(m). This case hinges on the question of whether Yoshino Love was an inmate at the time he was attacked by inmates within the Sunflower County Jail common room. We find that Love was indeed an inmate at the time of the incident in question and, therefore, Sunflower County is exempt from liability under Miss. Code Ann. § 11-46-9(1)(m).

## FACTS AND PROCEEDINGS IN THE CIRCUIT COURT

¶2.     Love was arrested on April 30, 2000, for aggravated assault with a weapon for allegedly shooting and injuring Richard Carpenter. After being held in the Sunflower County Jail for several days, on May 3, 2000, Love met with a bail bondsman in an effort to secure his release. After meeting with the bondsman and while awaiting for his mother to arrive with the necessary funds, Love went to retrieve his personal items from his cell. Love claims that he reported to Deputy Harold Keyes that Love had been threatened by Carpenter's brother, Elijah Shaver, who was a jail inmate. Deputy Keyes accompanied Love into the common area.[2] There, Love was attacked by several inmates. Keyes broke up the fray and

---

[1] The amended complaint is styled "Yoshino Love vs. Sunflower County Sheriff's Department, Ned Holder, In His Official Capacity As Sheriff of Sunflower County, Billy Weeks, In His Capacity As Jail Administrator of the Sunflower County Jail, Harold Keyes, In His Official Capacity With the Sunflower County Jail and John Does 1-3."

[2] While Love states in his brief that he had been threatened and refused to go back to the cell "for fear of bodily harm," and that he went only because a deputy told him he had to go, we find nothing in the record to support these allegations, nor does Love cite us to that part of the record which would support such assertions. Indeed, Love's deposition testimony reveals that Love requested Deputy Keyes to "escort me to the back to get my belongings." Additionally, at his deposition, Love testified that until May, the day of his release, he had not been threatened by anyone, and in fact, Love never identified Shaver, Carpenter's brother, as having threatened him. Love testified that a fellow inmate told him that day that "they fixing to try to jump you." Also, Love never identified Shaver as his attacker.

took Love back to the front of the jail where Love met with the bail bondsman. After Love's mother arrived with the money, the necessary paperwork was completed, and Love was released from the Sunflower County Jail. Upon his release, Love was taken by his mother to the hospital where he was admitted. Love suffered from internal bleeding and, as a result of the attack, his spleen was removed. We find nothing in the record indicating that Love was subsequently indicted for the alleged aggravated assault upon Richard Carpenter or that he was ever called upon to answer to this charge.

¶3.     Love filed this lawsuit in the Circuit Court of Sunflower County. The case was removed to federal court; however, the United States District Court for the Northern District of Mississippi remanded the matter to the Sunflower County Circuit Court. The Sunflower County defendants subsequently filed a Motion to Dismiss for Failure to State a Claim or, Alternatively, for Summary Judgment. Inasmuch as the circuit judge considered matters outside the pleadings, Miss. R. Civ. P. 12(b) and 56, he granted summary judgment due to a finding that the County was exempt from liability under Miss. Code Ann. § 11-46-9(1)(m). On appeal, Love argues that he was not an inmate since he was in the process of bonding out of jail and that since Deputy Keyes acted with reckless disregard for his safety and well-being, Sunflower County waived immunity. We disagree and, as a result, affirm the trial court.

**STANDARD OF REVIEW**

¶4.     The crux of this appeal involves a legal question: whether the governmental entity is exempt from liability under the Mississippi Torts Claims Act, Miss. Code Ann. §§ 11-46-1, et seq. In reviewing a governmental entity's exemption from liability on summary judgment, we have held:

3

[I]mmunity is a question of law and is a proper matter for summary judgment under Miss. R. Civ. P. 56.

This Court reviews de novo a trial court's summary judgment. *Short v. Columbus Rubber & Gasket Co.*, 535 So.2d 61, 65 (Miss. 1988). All evidence is viewed in the light most favorable to the non-movant. *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So.2d 1346, 1354 (Miss. 1990). *See also* *Brown v. Credit Ctr., Inc.*, 444 So.2d 358, 362-65 (Miss. 1983) and its progeny.

*Mitchell v. City of Greenville*, 846 So.2d 1028, 1029-30 (¶¶ 8-9) (Miss. 2003). We will, therefore, review this matter de novo.

## ANALYSIS

¶5.     Love has raised two issues on appeal. He argues that he was not an inmate within the meaning of the MTCA and that Deputy Keyes's alleged "wanton or reckless conduct" subjected the Sunflower County defendants to liability pursuant to the MTCA. For the following reasons, both arguments fail.

### I.     Miss. Code Ann. § 11-46-9(1)(m).

¶6.     The circuit judge granted summary judgment in favor of the County, finding that under the MTCA, governmental entities are exempt from liability for claims filed by inmates. The Mississippi Legislature has provided:

(1)     A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
...
(m)     Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution....

Miss. Code Ann. § 11-46-9(1)(m) (Supp. 2001). In 2002, this Court recognized that:

"Inmate" is defined as "a person confined to a prison, penitentiary or the like." Black's Law Dictionary 788 (6th ed. 1990). There is no restriction that the inmate must remain confined to the prison. The inmate remains an inmate while being transported, while participating in

4

public service work programs or while on leave if a pass is granted. *See* Miss. Code Ann. §§ 47-5-401 through-421 (2000 & Supp. 2001).

*Wallace v. Town Of Raleigh*, 815 So.2d 1203, 1207-08 (¶ 16) (Miss. 2002) (applying the inmate exemption to an inmate injured while working in a work release program.) In doing so, we held that "[t]he language of the statute is unambiguous, and the intent of the Legislature is clear. Inmates have been specifically excluded from bringing such actions against governmental entities." *Id.* at 1209 (¶ 21). Later that year, we refused to distinguish between a person "convicted" and "non-convicted" in that the exemption applied to persons in both classifications. *Liggans v. Coahoma County Sheriff's Dep't*, 823 So.2d 1152 (Miss. 2002).

¶7. Love, however, argues that he was not an inmate but rather was a "civilian detainee in the process of being released." While we agree that Love was "prepared" to bond out and had met with a bail bondsman, who, in turn, began to prepare the paperwork for Love's release, we must remember that Love had been arrested for aggravated assault with a weapon (a felony offense) three days prior and was still being held in the Sunflower County Jail. The attack on Love occurred before Love's mother arrived at the jail with the money to complete the bonding process.

¶8. Although Love testified at his deposition that he had signed all of the required documents to complete the bonding process, this does not defeat summary judgment. Even considering the testimony in the light most favorable to Love, at the time of the jail incident, he was waiting for his mother to bring the bond money to the jail so that he could be released. We must also consider the deposition testimony of Deloris Landfair, the bonding company agent who was handling the bonding process for Love. Landfair testified that in the bonding process, she has to deliver to the appropriate jail employee the executed

5

appearance bond and a power-of-attorney. In Love's case, Landfair described Love's status at the time Love returned to the jail area to retrieve his personal items:

> Q. At that time that he went back there had he taken any of the formal steps to post bond and be released?
>
> A. No.
>
> Q. What I'm asking, to be more specific, had he given you any money?
>
> A. No.
>
> Q. Had he signed any paperwork?
>
> A. No.
>
> Q. Was he free to go at that point?
>
> A. No.
>
> Q. So the jail wouldn't – he wasn't free to walk out the jail at that point?
>
> A. No, not at that time, because I hadn't done any paperwork at that time.

Earlier in her deposition, bonding agent Landfair had testified that the jail personnel would certainly not release a detained individual on her verbal assurance that the individual had posted bond, but instead, she had to present the necessary bond to be approved by the Sheriff before an individual could be released. Indeed the appearance bond, which was received as an exhibit to Landfair's deposition, reveals that the bond was in the amount of $15,000 and was a "day to day – term to term" bond on the charge of aggravated assault. The bond was signed by Love as principal and Landfair as attorney-in-fact for the surety/bonding company, and was approved by Sheriff Holder. All of this was done subsequent to the jail incident which is the subject of this litigation. Additionally, Love's mother was furnishing the required funds

to purchase the bail bond and as of the time of the incident in question, she had not arrived at the jail with the money. The cold hard facts are that until the money was paid and all paperwork complete, Love's release was not "imminent." At the time of the incident in question, Love was an inmate of the Sunflower County Jail and thus the Sunflower County defendants are exempt from liability under Miss. Code Ann. § 11-46-9(1)(m).

## II.    Miss. Code Ann. § 11-46-9(1)(c).

¶9.    In the alternative, Love asserts that the actions of Deputy Keyes were taken with wanton and/or reckless disregard sufficient to waive governmental exemption from liability. In providing for certain exemptions of liability under the MTCA, the Legislature stated, inter alia:

> (1)    A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> (c)    Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

Miss. Code Ann. § 11-46-9(1)(c). In setting out the 24 exemptions from liability under the MTCA, the conjunctive "or" is used. In *Liggans*, an 8-1 decision of this Court, we held that "[b]ecause a governmental entity, under the MTCA, is immune from all claims arising from claimants who are inmates at the time the claim arises, the 1(c) reckless disregard section does not apply," and we "conclude[d] that the circuit court's dismissal of Liggans's action is in keeping with the clear legislative intent of the Mississippi Tort Claims Act." *Liggans*, 823 So.2d at 1156 (¶¶ 13 & 14).

7

¶10.     Because we have found that the County is exempt from liability under Miss. Code Ann.§ 11-46-9(1)(m), Love's argument is without merit.

## CONCLUSION

¶11.     While we are not unsympathetic to Love's injuries and resulting damages, we are on the other hand bound by our case law and by clear legislative intent in the enactment of the MTCA, which provides, inter alia, that a governmental entity and its employees, when acting within the course and scope of their employment, shall not be liable for any claim made by one who at the time of the cause of action is a jail inmate.  Love was without question an inmate of the Sunflower County Jail at the time of this unfortunate attack by fellow jail inmates.

¶12.     Accordingly, we affirm the trial court's summary judgment in favor of the Sunflower County defendants.

¶13.     **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., COBB AND EASLEY, JJ., CONCUR.  GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, J.  DIAZ, J., NOT PARTICIPATING**.

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶14.     I have long voiced my displeasure with the Mississippi Tort Claims Act, because I believe that it denies certain rights to our citizens that are guaranteed by our state constitution.  Thus, I take great exception to the majority opinion, which judicially amends this legislation in order to expand its coverage to the detriment of even more of this state's citizens.  In this case Love was a pretrial detainee and not a

convicted person labeled an inmate. Because I believe that the actions taken by the majority today are incorrect, unwarranted, and within the province of the Legislature, I dissent.

## WAS LOVE AN "INMATE" WHILE IN THE PROCESS OF BONDING OUT?

¶15. Love argues that since he was bonding out of jail when he was injured, he was not an "inmate" as is contemplated by the provision, but rather was *civis pendens libertas* – a civilian whose formal release is imminent. He was at best a "pretrial detainee". Love contends that "the Tort Claim Exception was never intended to apply to a civilian who was virtually passing through the jail." I agree.

¶16. In *Wallace v. Town of Raleigh,* 815 So.2d 1203 (Miss. 2002), we held that an inmate performing his duties as an inmate of the Mississippi Department of Corrections through the County Correctional Work Center was indeed an inmate, thus barring his personal injury claim for injuries sustained in a truck accident. The majority offers the following quote from Wallace:

> "Inmate" is defined as "a person confined to a prison, penitentiary or the like." Black's Law Dictionary 788 (6th ed. 1990). There is no restriction that the inmate must remain confined to the prison. The inmate remains an inmate while being transported, while participating in public service work programs or while on leave if a pass is granted. *See* Miss. Code Ann. §§ 47-5-401 through -421 (2000 & Supp. 2001). 815 So.2d at 1207-08. Subsequently in that case, we held that "[t]here is no restriction that the inmate must remain confined to the prison. The inmate remains an inmate while being transported, while participating in public service work programs or while on leave if a pass is granted." *Id*.

In *Liggans v. Coahoma County Sheriff's Dep't,* 823 So.2d 1152, 1154 (Miss. 2002), we held that the key factor to the inmate exemption is "incarceration." The *Liggans* plaintiff was injured while incarcerated in her cell, having fallen from a top bunk. She had not been convicted at the time but was being held on intoxication charges. Pursuing recovery for her injury, she argued that since she had not

9

been convicted she was merely a pre-trial detainee and not an "inmate." Citing *Jones v. City of Jackson*, 203 F.3d 875 (5th Cir. 2000), we ruled that "convict" status was not controlling under the MTCA's inmate exception, but instead, she was "incarcerated" at the time of her fall. *Liggans,* 823 So.2d at 1155

¶17.    The majority cites these cases as authority for the proposition that a person who has been arrested, yet not charged is within the definition of inmate. However, such a tremendous inferential leap is well outside the bounds of case law or basic logic. In *Liggans*, we were dealing with a person who had already been charged with an offense and in *Wallace*, we were dealing with a person who had already been convicted. However, in this case, we are dealing with a plaintiff who was merely arrested, but **never charged**, thus making the facts of either case easily distinguishable.

¶18.    Notwithstanding, the factual differences here the majority employs the same faulty logic used in *Liggans*[3], i.e., that the Tort Claims Act uses the term "inmate" and, therefore since it did not exclude pre-trial detainees or, in this case, those temporarily held in custody yet never charged, that it applies to them as well. Therefore, the majority has simply assumed that the definition of "inmate" provided in *Wallace*, automatically includes these types of parties. However, that is not the case.

¶19.    The notion that the term inmate includes one who has been arrested has been rejected already by at least two courts outside of this jurisdiction. The Seventh Circuit has noted, albeit indirectly, that there is a legal difference between a prison inmate and "a person confined following his arrest but not yet charged

_____

[3] Indeed, *Liggans*, itself was based on a similar assumption that was made by the Fifth Circuit in *Jones v. City of Jackson*, 203 F.3d 875 (5th Cir. 2000). There, without any supporting authority, the Fifth Circuit interpreted the exemption in question as turning on "incarceration" despite the fact that the term is not used in the statute, itself.

or convicted." ***Wilkins v. May***, 872 F.2d 190, 194 (7th Cir. 1989) (noting that both prisoners and those arrested, but not yet charged are entitled to Eighth Amendment protection).

¶20.    More directly on point ***Teter v. City of Newport Beach***, 66 P.3d 1225 (Cal. 2003), which was recently decided by the California Supreme Court.    In ***Teter***, the plaintiff was arrested for public intoxication, but never charged. ***Id.*** at 1226.  However, before being released, the plaintiff was severely beaten by a fellow inmate who was placed in the same cell as the plaintiff. ***Id.*** at 1227.  When the plaintiff sued the city for negligence, the city invoked with California's Tort Claims Act, which contained the following language:

> As used in this chapter, 'prisoner' includes an inmate of a prison, jail, or penal or correctional facility.  *For the purposes of this chapter, a lawfully arrested person who is brought into a law enforcement facility for the purpose of being booked … becomes a prisoner, as a matter of law, upon his or her initial entry into a prison, jail, or penal or correctional facility, pursuant to penal processes.*

*Id*. at 1227 (quoting California Government Code Section 844)(emphasis in original).  Thus, for the purposes of California's statute, the plaintiff was a prisoner at the time of his injury and, thus, was unable to pursue his claim against the city. *Id*. at 1229.

¶21.    Together, these two cases make two things glaringly apparent. First, a post-arrest detainee who has not been charged with an offense is not within the traditional definition of inmate as cited by the majority.  Second, our Legislature has not taken the appropriate steps to include this type of detainee within the definition of inmate in the Mississippi Tort Claims Act.  Such an amendment is the job of the Legislature, not this Court.

¶22.    Love was not an "inmate," but still a citizen who was a pretrial detainee whose release from the jail was irretrievably in effect. Accordingly, the circuit court's order granting summary judgment should be reversed and the cause remanded for further proceedings.

¶23.    For these reasons, I dissent.

**WALLER, J., JOINS THIS OPINION.**