NO. 07-06-0425-CV
 
IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MAY 19, 2008
______________________________

GENEKE ANTONIO LYONS, APPELLANT

V.

TROOPER JASON HENDERSON, THE TEXAS
DEPARTMENT OF PUBLIC SAFETY AND 
THE STATE OF TEXAS, APPELLEES
_________________________________

FROM THE 31ST DISTRICT COURT OF WHEELER COUNTY;

NO. 11808; HONORABLE STEVEN R. EMMERT, JUDGE
_______________________________


Before HANCOCK and PIRTLE, JJ., and BOYD, S.J.



MEMORANDUM OPINION
          Appellant, Geneke Antonio Lyons, appeals the dismissal of a case he brought
against appellees, the State of Texas, the Texas Department of Public Safety (hereafter,
“TDPS”), and TDPS Trooper Jason Henderson, seeking the return of $106,254.91 seized
during a traffic stop of Lyons. We reverse and remand.
Background
          As the trial court entered its order of dismissal without hearing evidence, our review
of the trial court’s jurisdictional ruling is based on whether Lyons pled facts that
affirmatively demonstrate the trial court’s jurisdiction to hear the case. Tex. Dep’t of Parks
& Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). As such, our review of the
relevant facts are limited to those asserted by Lyons in his petition. Lyons pled that, “On
or about November 9, 2005, in Wheeler County, Texas, Trooper Henderson stopped
Plaintiff’s vehicle and seized $106,254.91 in cash and arrested Plaintiff for money
laundering. Plaintiff has subsequently been indicted in Cause No. 4283 . . . now pending
in the 31st Judicial District Court of Wheeler County, Texas, and will enter a plea of ‘not
guilty.’” In addition, Lyons pleaded that forfeiture proceedings had not been initiated within
30 days of the seizure of the money, as required by Texas Code of Criminal Procedure
article 59.04(a), nor had forfeiture proceedings been commenced by the date Lyons filed
his petition. Tex. Code Crim. Proc. Ann. art. 59.04(a) (Vernon 2006).


 Lyons specifically
alleged that the defendants had committed theft in violation of 42 U.S.C. § 1983, see 42
U.S.C.A. § 1983 (2003),


 and had taken private property without just compensation in
violation of the Fifth Amendment of the United States Constitution. Within his pleading,
Lyons also complained that Trooper Henderson failed to comply with article 59 of the
Texas Code of Criminal Procedure because he failed to initiate suit to forfeit the seized
funds within 30 days. Lyons prayed for the return of the $106,254.91, an award of
$2,000,000 in exemplary damages, and an award of reasonable and necessary attorney’s
fees.
          In response, the defendants collectively filed an Answer, Plea to the Jurisdiction,
and Motion to Dismiss. By their Plea, the defendants alleged that sovereign immunity
barred Lyons’s suit against the State and TDPS and that Henderson was protected by both
qualified and official immunity. The trial court granted the defendants’ Plea to the
Jurisdiction and Motion to Dismiss based solely on the pleadings on file.


 Following the
trial court’s dismissal of Lyons’s suit, Lyons filed a Motion to Reinstate Suit and Request
for Hearing which, inter alia, requested reinstatement of the suit based on the trial court
dismissing the case with prejudice, but without first affording Lyons an opportunity to
amend his Petition. The record does not reflect the trial court’s ruling on this motion.
          By two issues, Lyons appeals. By his first issue, Lyons contends that the trial court
erred in dismissing his suit with prejudice without holding a hearing. By his second issue,
Lyons contends that the trial court erred by determining that it did not have subject matter
jurisdiction over this case under article 59 of the Texas Code of Criminal Procedure. 
Because a reversal of Lyons’s second issue would pretermit review of his first issue, we
will address his issues in reverse order.
 
Subject Matter Jurisdiction
          In his Petition for Return of Seized Funds, Lyons alleged theft, in violation of section
1983, and a taking of private property without just compensation, in violation of the Fifth
Amendment of the United States Constitution. By his appellate issue, Lyons contends that
article 59 of the Texas Code of Criminal Procedure either provides a cause of action for
recovery of improperly seized property or is unconstitutional. However, this issue was not
expressly presented in Lyons’s pleading. As it relates to article 59, Lyons’s pleading simply
identifies article 59.04's requirement that the attorney representing the State commence
forfeiture proceedings within 30 days of the seizure and states that this requirement was
not met in this case. When reviewing a challenge to a trial court’s subject matter
jurisdiction based on the pleadings, we must construe the pleadings liberally in favor of the
plaintiff and look to the pleader’s intent. Christus Health Gulf Coast v. Aetna, Inc., 237
S.W.3d 338, 342 (Tex. 2007); Miranda, 133 S.W.3d at 226. Applying this standard, we
conclude that the pleading is sufficient to allege a claim for a violation of article 59,
although no alternative claim of a constitutional violation was asserted.
          Subject-matter jurisdiction is essential to a court's power to decide a case. See Tex.
Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). If a court lacks
subject matter jurisdiction, any order by the court in the proceeding is void. See Mapco v.
Forrest, 795 S.W.2d 700, 703 (Tex. 1990) (orig. proceeding). Subject matter jurisdiction
is never presumed and cannot be waived. See Tex. Ass’n of Bus., 852 S.W.2d at 443-44. 
Whether a court has subject matter jurisdiction is a matter of law reviewed de novo. Tex.
Nat’l Res. Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). 
          Sovereign immunity protects the State of Texas, its agencies, and its officials from
lawsuits for damages, absent legislative consent to suit. Fed. Sign v. Tex. S. Univ., 951
S.W.2d 401, 405 (Tex. 1997). Any legislative consent to suit or waiver of immunity must
be made “by clear and unambiguous language.” Id. Further, it is the sole province of the
legislature to waive or abrogate sovereign immunity. Id. at 409. Thus, for Lyons to
maintain suit against any of the defendants named in his suit, he must state facts in his
pleading that establish that the defendants are either outside of the protection of sovereign
immunity or that the legislature has clearly and unambiguously consented to the type of
suit he is asserting. See Univ. of Tex. Med. Branch at Galveston v. York, 871 S.W.2d 175,
177 (Tex. 1994).
          Lyons failed to plead any legislative consent to suit. As previously noted, his
pleading alleges a violation of article 59 of the Texas Code of Criminal Procedure, a
violation of section 1983, and a taking of private property without just compensation. 
However, Lyons did not cite any legislative consent to suit for these claims. Because
Lyons seeks damages against the State, one of its agencies, and one of its officials, the
legislature must have clearly and unambiguously consented to the claims he asserts. Fed.
Sign, 951 S.W.2d at 405; York, 871 S.W.2d at 177. 
          Looking at the facts pled that support each claim asserted by Lyons, we start with
Lyons’s claim that the defendants violated section 1983. Lyons’s entire section 1983 claim
is that the defendants’ taking of his money under color of law constituted theft, which he
contends is actionable under section 1983. An action under section 1983 may not be
maintained against a state or a state agency because neither are “persons” for purposes
of section 1983. See Will v. Mich. Dep’t of State Police, 491 U.S. 58, 68, 109 S.Ct. 2304,
105 L.Ed.2d 45 (1989); Fed. Sign, 951 S.W.2d at 405. However, Trooper Henderson is
a person under section 1983. Lyons’s section 1983 claim against Henderson is entirely
based on Henderson not initiating a forfeiture proceeding within 30 days of the seizure of
Lyons’s property. However, article 59.04(a), upon which Lyons relies, specifically indicates
that the duty to initiate forfeiture proceedings is on the attorney representing the State and
not on the seizing officer. Thus, Lyons’s pleading fails to state facts that would establish
that Henderson did or failed to do anything that violated Lyons’s constitutional rights. 
Further, the facts alleged by Lyons do not provide any challenge to Henderson’s assertion
of official immunity. See Kassen v. Hatley, 887 S.W.2d 4, 8 (Tex. 1994) (government
official protected while performing discretionary duties in good faith within scope of
authority); Wyse v. Dep’t of Pub. Safety, 733 S.W.2d 224, 227 (Tex.App.–Waco 1986, writ
ref’d n.r.e.) (police officers are protected by official immunity). Thus, we affirm the trial
court’s dismissal of Lyons’s section 1983 claims.
          Based on our analysis above, it is clear that the facts alleged by Lyons, even if true,
are insufficient to state a claim against Henderson based on a violation of article 59. Put
another way, Lyons wholly fails to identify any facts that would show any breach of a duty
imposed on Henderson by article 59. As such, we conclude that the trial court did not err
in dismissing Lyons’s article 59 claim against Henderson. 
          As to his article 59 claims against the State and TDPS, Lyons identifies no authority
that supports a cause of action against the State for violation of article 59 nor, more
importantly, any legislative consent to such suits.


 Further, we have found no clear and
unambiguous legislative consent to suit for violation of article 59. Since the State and
TDPS are immune from suit for damages absent a clear and unambiguous legislative
waiver of immunity and as no such waiver has been given, we affirm the trial court’s
dismissal of Lyons’s claims for violation of article 59.
          Finally, Lyons alleged that the defendants took his property without just
compensation in violation of the Fifth Amendment of the United States Constitution. The
Fifth Amendment applies only to violations of constitutional rights by the United States or
a federal actor. Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000). Clearly, none
of the defendants are part of the federal government. In addition, Lyons does not allege
that any of the defendants were acting under the authority of the federal government. 
Thus, Lyons has not stated an actionable Fifth Amendment claim. Id. As such, we affirm
the trial court’s dismissal of Lyons’s claims for a taking in violation of the Fifth Amendment.
          After reviewing the facts alleged by Lyons and the claims asserted against the
defendants, we conclude that the trial court did not err in finding that it lacked subject
matter jurisdiction over Lyons’s claims. 
 
Dismissal With Prejudice
          While we affirm the trial court’s determination that it lacked subject matter
jurisdiction over Lyons’s claims, we must consider whether the trial court erred in
dismissing Lyons’s suit with prejudice without affording Lyons an opportunity to amend his
pleading. While there is no requirement that the trial court hold a hearing on a plea to the
jurisdiction, a plaintiff is entitled to a reasonable opportunity to amend unless his pleadings
affirmatively negate the existence of jurisdiction. See Tex. A&M Univ. Sys. v. Koseoglu,
233 S.W.3d 835, 839 (Tex. 2007); Miranda, 133 S.W.3d at 226-27. Because the trial court
considered the parties’ pleadings without holding a hearing, the issue is whether Lyons
could have cured the jurisdictional deficiency of his pleading by amendment.
          As addressed above, the legislature has not consented to suit against the State for
any of the claims asserted by Lyons. To the limited extent that Lyons’s suit attempts to
determine the parties’ relative rights to the seized property, Lyons does not need legislative
consent to suit. Fed. Sign, 951 S.W.2d at 404; Tex. Workforce Comm’n v. MidFirst Bank,
40 S.W.3d 690, 695 (Tex.App.–Austin 2001, pet. denied). Because a forfeiture proceeding
is an in rem proceeding, State v. Rumfolo, 545 S.W.2d 752, 754 (Tex. 1976), a suit
seeking a declaration of the parties’ rights to the seized property would not be a suit for
monetary damages.


 Thus, had Lyons been afforded the opportunity to amend his
pleading before the trial court dismissed his claims with prejudice, Lyons could have
amended his petition to request a declaration of the parties’ rights in the seized property. 
As such, we must reverse the trial court’s dismissal and remand the case to afford Lyons
a reasonable opportunity to amend his pleadings.
Conclusion
          We reverse the order of the trial court dismissing this cause and remand to the trial
court to give Lyons a reasonable opportunity to amend his pleadings.
 
                                                                           Mackey K. Hancock

                                                                                     Justice










d not believe that the level of PEEP decreased the cardiac output,
causing acidosis and cardiac arrest. The PEEP should have helped the cardiac output in
this instance by causing the blood vessels in the lungs to relax. John died because of the
bad inflammation or poisons from his body circulating in the system. 

 On cross-examination, Dr. Giroir stated that a reasonably prudent physician would
not have concluded that high PEEP led to cardiac arrest. However, he admitted he would
have treated John differently by inserting a pulmonary artery catheter, although it is not the
standard of care around the country. No patient in which he has inserted such a catheter
has died. He did not agree that the first priority upon appellee entering the hospital was
to necessarily see John. Appellee may have wanted to review the x-ray and talk to the
emergency room physician who treated John prior to seeing him. He admitted John's low
blood pressure could have been caused by decreased cardiac output. One way to
increase venous return is to decrease high levels of PEEP; however, in other
circumstances, by increasing volume.

 On redirect, he stated that although John's oxygen saturations were normal, that
fact does not mean the lungs are working well. He believed the high PEEP should have
helped increase the cardiac output in this instance, because an echocardiogram did not
show the heart was squeezed, the oxygen went up in the blood, and the lung mechanics
were improved. The first real signs of acidosis did not occur until about ten minutes before
John went into cardiac arrest. He opined that it is not uncommon to nick an intercostal
vessel when a chest tube is inserted, so the bleeding experienced by John probably
resulted from that. If a pulmonary artery had been hit, John would have died within
moments.

 Thus, the evidence shows that contrary to appellants' assertions of undisputed
testimony, the evidence was conflicting as to whether appellee acted negligently and as
to whether those actions, if any, resulted in John's death. Given the conflicting testimony,
it was within the province of the jury to resolve those conflicts. The decision of the jury was
not against the great weight and preponderance of the evidence, and we overrule
appellants' third issue.

 In their fourth issue, appellants contend the trial court abused its discretion by
overruling their motion for new trial because of admitted juror misconduct. The final
judgment was signed on June 9, 2000. Appellants' motion for new trial was filed on July
10, 2000, which was within the required 30-day period. See Tex. R. Civ. P. 329b(a). In
that motion, appellants did not raise the issue of juror misconduct. However, one of the
basis of the motion was that the verdict was against the great weight and preponderance
of the evidence. 

 On August 17, 2000, appellants filed a supplemental motion for new trial on the
basis of juror misconduct. Although appellee asserts that the supplemental motion was
not timely filed, appellants argue that the issue of juror misconduct was directly related to
the issue of lack of evidence in the record to support the verdict. 

 Amended motions for new trial must be filed before any preceding motion for new
trial has been overruled and within 30 days after the judgment is signed. Tex. R. Civ. P.
329b(b). Any motion or amendment filed after expiration of 30 days is untimely and cannot
be considered by the trial court or appellate court. Bell v. Showa Denko K.K., 899 S.W.2d
749, 757 (Tex.App.--Amarillo 1995, writ denied). To the extent that a supplemental motion
may be different from an amended motion for new trial, the same rule applies. Voth v.
Felderhoff, 768 S.W.2d 403, 412 (Tex.App.--Fort Worth 1989, writ denied). Furthermore,
an argument of insufficient evidence to support a verdict may be premised on factors other
than juror misconduct, and appellants contended in their supplemental motion for new trial
that the evidence of juror misconduct was newly discovered. Therefore, they argue, it
could not have formed a basis of their original motion for new trial. 

 However, even if it could be said that appellants raised the issue of juror misconduct
in their original motion for new trial, we do not believe the trial court acted improperly in
overruling the motion on that basis. Juror Jane Doe testified that she is now in a romantic
relationship with one of appellants' trial counsel. She did not tell appellants' counsel about
her juror misconduct until after she began dating him. She averred that while serving on
the jury, she spoke by telephone to a friend of hers who is a doctor. Prior to that
conversation, she said she had determined she would find appellee negligent and that his
negligence proximately caused the death of John. She explained to her friend the main
points why she believed appellee was negligent, but in the telephone conversation, he
refuted each of her arguments. As a result of that conversation, she said, by the time the
jury voted, she had reversed her previous position on negligence. Instead of basing her
decision on what was testified to at trial, she based her decision on the information
provided by her friend. At the hearing, when she attempted to go further and testify as to
what she had told the other jurors, in the hope they would not find appellee negligent,
appellee's objection was sustained by the trial court. 

 Rule 327 of the Rules of Civil Procedure provides:

 a. When the ground of a motion for new trial, supported by affidavit, is
misconduct of the jury or of the officer in charge of them, or because of any
communication made to the jury, or that a juror gave an erroneous or
incorrect answer on voir dire examination, the court shall hear evidence
thereof from the jury or others in open court, and may grant a new trial if
such misconduct proved, or the communication made, or the erroneous or
incorrect answer on voir dire examination, be material, and if it reasonably
appears from the evidence both on the hearing of the motion and the trial of
the case and from the record as a whole that injury probably resulted to the
complaining party.


 b. A juror may not testify as to any matter or statement occurring during the
course of the jury's deliberations or to the effect of anything upon his or any
other juror's mind or emotions as influencing him to assent to or dissent from
the verdict concerning his mental processes in connection therewith, except
that a juror may testify whether any outside influence was improperly brought
to bear upon any juror. Nor may his affidavit or evidence of any statement
by him concerning a matter about which he would be precluded from
testifying be received for these purposes. 


Tex. R. Civ. P. 327. Furthermore, Rule 606(b) of the Rules of Evidence provides:

 (B) Inquiry Into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any
matter or statement occurring during the jury's deliberations, or to the effect of anything
on any juror's mind or emotions or mental processes, as influencing any juror's assent to
or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by
a juror concerning any matter about which the juror would be precluded from testifying be
admitted in evidence for any of these purposes. However, a juror may testify: (1) whether
any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim
that the juror was not qualified to serve.


Tex. R. Evid. 606(b). Outside influences about which a juror may testify must originate
from sources other than the juror herself. Golden Eagle Archery, Inc. v. Jackson, 24
S.W.3d 362, 370 (Tex. 2000). Indeed, it has been held that information gathered by a juror
does not amount to an outside influence, even if introduced to other jurors specifically for
the purpose of prejudicing the jurors' votes. Soliz v. Saenz, 779 S.W.2d 929, 932
(Tex.App.--Corpus Christi 1989, writ denied). That being so, the trial court did not err in
excluding Jane Doe's testimony with respect to her relaying the information she obtained
to the other jurors during the jury deliberations. 

 To obtain a new trial because of juror misconduct, it must be shown that the
misconduct occurred, it was material, and the misconduct resulted in harm. Tex. R. Civ.
P. 327(a); Redinger v. Living, Inc., 689 S.W.2d 415, 419 (Tex. 1985). To the extent that
Jane Doe's conversation with her friend was an outside influence exerted on her, we do
not believe it resulted in harm. There is no probable injury when the jury in all probability
would have rendered the same verdict. Id. at 419. In this case there was a unanimous
verdict. Therefore, even if Jane Doe's vote was not counted, there would have been 11
votes to support the verdict. A verdict may be rendered by the concurrence of ten
members of an original jury of 12. Tex. R. Civ. P. 292. Reversal is not required by jury
misconduct when the verdict would be supported by the required ten jurors. See Redinger,
689 S.W.2d at 419. Therefore, appellants' fourth issue is overruled. 

 In their fifth and final issue, appellants argue that a new trial is required to allow a
thorough investigation of a newly discovered death certificate. They allege that, after
completion of the trial, they discovered appellee filed a fraudulent death certificate, which
had been replaced by the medical examiner. The use of that false death certificate at trial
"allowed for confusion of the jury on the issue of the cause of death of John." Further, they
argue, appellee allowed appellants to rely on the death certificate in preparing their expert
testimony relating to the cause of death. The cause of death on the certificate signed by
appellee was "cardiac arrest" due to drowning, while the cause of death on the certificate
signed by the medical examiner was "complications of near drowning." 

 At the hearing on the motion for new trial, appellants offered the affidavit of Robert
Byers, the Chief Investigator for the Lubbock County Medical Examiner, in which he stated
that since October 1, 1994, Lubbock has operated under a medical examiner system in
which only physicians employed by the medical examiner's office may sign a death
certificate when the manner of death is not natural. Therefore, appellee was not
authorized to sign the death certificate. Appellants also admitted an affidavit from Dr.
Charles Landers, their trial expert, in which he stated that his "analysis of the actions of
Dr. Baluswamy Viswanathan were premised on the medical records provided to me,
including documentation that the cause of death was determined to be cardiac arrest." He
further stated that if "the cause of death noted on a valid death certificate had been listed
as 'complications from a near drowning incident,' my analysis and testimony for the jury
would have had a different focus." Dr. Landers focused his analysis on the effects of high
PEEP on the heart since he believed the cause of death to be cardiac arrest. However,
he averred, if the cause of death was that shown on the medical examiner's death
certificate, he would have focused his analysis on the effect of high PEEP on the lungs. 


 Appellee testified at the hearing on the motion for new trial and stated that the death
certificate was mailed to him. He believed he was to fill it out and sign it. He did so and
sent it back in a self-addressed envelope. He had no knowledge that there was a problem
with the death certificate until after trial. Although he knew that an autopsy would be done,
he did not know that the medical examiner would fill out a death certificate.

 To obtain a new trial based on newly discovered evidence, appellants must show
that the evidence has come to their knowledge since trial, their failure to discover it prior
to trial was not due to the lack of diligence, the evidence is not cumulative, and it is so
material that it would probably produce a different result if a new trial was granted. 
Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983). The matter is addressed to the
discretion of the trial court and will not be disturbed absent an abuse of discretion. Id. 

 A death certificate is a public document and, if the second one was in fact the
official death certificate, it should have been available to appellants prior to trial. Although
appellants fault appellee for not knowing that the death certificate he signed was not an
official document, if they had been aware of the law, they should have also known to obtain
a certificate signed by the medical examiner. Moreover, the cause of death, which
appellants contend is newly discovered, is cumulative. The autopsy report which was
admitted into evidence also shows the cause of death as complications of near drowning. 
Therefore, the second death certificate does not add any information not already before
the jury. (1) Furthermore, Dr. Landers not only reviewed the death certificate, he also
testified at trial he had reviewed the autopsy report. Additionally, he did not claim mere
reliance on the cause of death in the death certificate. At trial he stated he agreed with it. 
That testimony indicated that the doctor had formed his own independent opinion based
on his review of the medical records, autopsy report, and deposition testimony. Therefore,
in spite of Dr. Landers's assertions that he would have presented different testimony, we
fail to see why he should have an opportunity to do so when the same information was
available to him in the first trial. There was no abuse of discretion on the part of the trial
court in its denial of appellants' motion for new trial on the basis of newly discovered
evidence, and appellants' fifth issue is overruled. 


 In final summary, all of appellants' issues are overruled, and the judgment of the
trial court is affirmed.

 John T. Boyd

 Chief Justice


Publish.
1. While the first death certificate was discussed at trial, we do not find in the record
that it was admitted into evidence.